Exhibit 4

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST,<br><br>Plaintiff,<br><br>vs.<br><br><br><br>THE BLACK AND DECKER CORPORATION, et al.<br><br>Defendants. | CASE NO. 06cv1572 BTM (CAB)<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION OF DENIAL OF OBJECTIONS TO MAGISTRATE JUDGE'S ORDER OF APRIL 9, 2007 AS MOOT [Doc. #163];**<br><br>**(2) GRANTING DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S JUNE 20, 2007 ORDER RE BIFURCATION [Doc. #171];**<br><br>**(3) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STAY [Doc. #178];**<br><br>**and**<br><br>**(4) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS PREMATURE [Doc. #204]** |

## I.    Motion for Reconsideration of Denial of Objections to Magistrate Judge's Order

On April 9, 2007, Magistrate Judge Bencivengo issued an order in which she granted in part and denied in part Plaintiff's motion to compel further responses to discovery. In accordance with 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a), Plaintiff filed an

objection to that ruling, arguing that it was both clearly erroneous and contrary to law. In an order entered June 14, 2007, the Court overruled Plaintiff's objection without prejudice. The Court found that the Magistrate Judge's determinations regarding the Black & Decker Defendants' waiver of the attorney-client privilege, and the applicability of Patent Local Rule 2.5(d), were neither clearly erroneous nor contrary to law, on the record before the Court. However, the Court was unable to determine at that time whether, and to what extent, the Black & Decker Defendants ("B&D") intended to rely upon the death of Dennis Dearing to provide the requisite showing of prejudice in support of any laches and/or equitable estoppel defenses. Therefore, Plaintiff was granted leave to serve an interrogatory upon B&D, which stated: "Set forth, in detail, all prejudice to Defendants that resulted from the death of Dennis Dearing in regard to this case." To the extent Plaintiff believed that B&D's response to the interrogatory indicated that this Court's determination regarding waiver of the attorney-client privilege was in error, it was invited to move for reconsideration of the decision at that time.

On July 11, 2007, B&D responded to Plaintiff's interrogatory setting forth the prejudice that resulted from the death of its former in-house counsel Dennis Dearing. The prejudice identified included the inability to have Mr. Dearing testify regarding his communications in the mid-1990s pertaining to Mr. Jens Ole Sorensen's claims of infringement of the '184 Patent. These communications included discussions directly with Mr. Sorensen and his representatives, as well as with John Schiech, Black & Decker's business manager responsible for making all decisions concerning the matter. B&D also indicated that it was prejudiced because it could not present Mr. Dearing as a witness to defend against Plaintiff's charge of willful infringement.

On July 12, 2007, Plaintiff filed the present motion to reconsider this Court's previous ruling on the basis of the new evidence presented in B&D's interrogatory response. The motion was calendared for hearing, without oral argument, on August 10, 2007. However, while the motion was pending, Magistrate Judge Bencivengo reconsidered her earlier ruling in light of B&D's interrogatory response. On August 3, 2007, Judge Bencivengo issued her "Order Following Discovery Conference on July 26, 2007" in which she ruled:

> Since the defendant is affirmatively relying upon the death of Mr. Dearing to support its defense of laches, the plaintiff is entitled to review Mr. Dearing's files that still exist and reflect his personal thoughts and impressions, so plaintiff may respond to defendant's claim of lost evidence. Defendant was therefore ordered to produce any withheld documents reflecting Mr. Dearing's work product on this matter.

[Doc. #177 at ¶ 8.] Judge Bencivengo stayed production of Mr. Dearing's work product for 30 days in order to give B&D an opportunity to appeal the order. B&D has just taken that opportunity and filed a motion for reconsideration on September 4, 2007 [Doc. #240]. B&D's motion is calendared for hearing by this Court on November 2, 2007.

In light of Judge Bencivengo's more recent order requiring production of Mr. Dearing's privileged documents, and the now-pending motion for reconsideration of that order, the Court finds moot Plaintiff's motion for reconsideration of its previous order overruling Plaintiff's objection to Judge Bencivengo's April 9, 2007 order. The Court finds that this entire issue will be addressed, upon a complete and updated record that includes Judge Bencivengo's August 3, 2007 order, in the Court's forthcoming decision on B&D's pending motion for reconsideration. Accordingly, Plaintiff's motion is **DENIED** without prejudice as moot.

## II. Motion for Reconsideration of Bifurcation

On June 13, 2007, the Court held a hearing on B&D's motion for summary judgment of laches. The Court denied B&D's motion at that hearing and discussion then ensued over the possibility of setting an expedited bench trial on B&D's equitable defenses of laches and estoppel. At B&D's urging, the Court and the parties agreed to schedule this bench trial beginning on December 17, 2007. In a June 20, 2007 written order confirming the Court's decision from the June 13 hearing, the Court explained that the trial of equitable defenses could be bifurcated from the rest of the trial proceedings relating to infringement. [Doc. #147 at 2-3.] Citing the Ninth Circuit case of Danjaq LLC v. Sony Corp., 263 F.3d 942 (9th Cir. 2001), the Court explained that, in deciding these equitable defenses, it would need to determine whether there has been any showing of willful infringement on the part of

Defendants that would act as a "counterdefense" to laches. The Court invited any party to make a motion for reconsideration of the decision to bifurcate the equitable portion of the trial if they felt that the Court's determination of the willfulness issue presented a problem for any subsequent jury trial proceedings.

On July 20, 2007, B&D accepted the Court's invitation and filed a motion for reconsideration of bifurcation. [Doc. #171.] B&D explained that it had not appreciated that the Court itself would need to make a finding on willfulness, without the aid of a jury, in any bifurcated trial on equitable defenses. In light of this realization, and its desire to retain its full rights to a jury determination on willfulness, B&D withdrew its request for an expedited bench trial on its equitable defenses.

Plaintiff has opposed B&D's motion for reconsideration arguing that there is no authority establishing any right to a jury trial on willfulness and, to the extent such a right exists, B&D has waived its rights by continually requesting that the Court schedule a short bench trial on laches before proceeding with the rest of the action.

The Court finds that the right to a jury trial on willfulness exists in a patent action that will be tried to a jury. See, e.g., Richardson v. Suzuki Motor Co., 886 F.2d 1226, 1250 (Fed. Cir. 1989). Having considered the submissions of the parties and the record of these proceedings, the Court does not find that B&D has knowingly waived its right to a jury trial on willfulness. Moreover, the early bifurcated trial on equitable defenses was scheduled by this Court in an effort to accommodate B&D's request for an early determination of laches, which it argued, if found, would greatly expedite the conclusion of this matter. Having recognized that a laches determination requires that this Court determine, before any jury has considered the question, whether Defendants willfully infringed Plaintiff's patent, B&D has withdrawn its request. The Court sees no reason to push ahead with a bifurcated trial despite B&D's express wishes.

The Court's recognition of the practical ramifications of the intertwinement of willfulness in any laches determination was the impetus for the Court's invitation to reconsider in its June 20, 2007 order. Having considered B&D's submission, which was

4

1 based upon the exact issues identified in this Court's own order, the Court hereby **GRANTS**

2 B&D's motion. The bifurcated bench trial on equitable defenses previously scheduled for

3 December 17, 2007 is hereby **VACATED**, along with all pretrial proceedings associated with

4 it, including the November 26, 2007 pretrial conference.

5

6 **III.    Motion to Stay Litigation Pending Reexamination**

7 On August 3, 2007, all Defendants jointly filed a motion for a stay of these

8 proceedings. Defendants' motion is based on B&D's pending request for reexamination of

9 Plaintiff's '184 Patent, which was filed with the U.S. Patent and Trademark Office ("PTO") on

10 July 30, 2007. The request for reexamination challenges, *inter alia*, all 5 claims of the '184

11 Patent that are asserted in the present litigation. The challenge is based on a number of

12 prior art references, almost all of which were apparently not considered by the PTO in the

13 prosecution of the '184 Patent.

14 Courts have inherent power to stay an action pending conclusion of PTO

15 reexamination proceedings. Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988).

16 The decision whether to grant or deny a motion to stay proceedings pending PTO

17 reexamination rests within the sound discretion of the court. See, e.g., Photoflex Products,

18 Inc. v. Circa 3 LLC, No. C 04-03715 JSW, 2006 U.S. Dist. LEXIS 37743, at *2-3 (N.D. Cal.

19 May 24, 2006). There is a "liberal policy" in favor of granting motions to stay pending the

20 outcome of PTO reexamination proceedings. ASCII Corp. v. STD Entertainment USA, Inc.,

21 844 F. Supp. 1378, 1381 (N.D. Cal. 1994).

22 In determining whether to stay litigation pending reexamination by the PTO, courts

23 generally consider the following factors: (1) the stage of litigation, i.e., whether discovery is

24 almost complete and whether a trial date has been set; (2) whether a stay would cause

25 undue prejudice or present a clear disadvantage to the non-moving party; and (3) whether

26 a stay will simplify the issues in question and trial of the case. See, e.g., Xerox Corp. v.

27 3Com Corp., 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999).

28 The Court finds that this litigation has not proceeded so far that it would be unjust to

06cv1572

stay the action.  Although this action was originally filed about a year ago, and the Court recognizes that substantial amounts of discovery have already occurred, the more relevant inquiry is whether discovery is nearing completion – it is not.[1]  For instance, Magistrate Judge Bencivengo recently granted the parties permission to take an additional 10 depositions per side. [See Doc. #159 at 2.]  No deadline for the completion of fact discovery has even been set.  Moreover, the parties are just beginning to brief the preliminary issue of claim construction and, in accordance with the decision above to vacate the bifurcated bench trial on equitable defenses, no trial date is currently set for any aspect of this case.  In addition, while the Court has already considered two motions for summary judgment, it previously put off consideration of two others until after claim construction, and Plaintiff has just filed a substantial summary judgment motion aimed at piercing Black & Decker's corporate veil.  The Court anticipates that further summary judgment motions regarding infringement and patent validity will be filed once claim construction is complete.  Thus, a substantial amount of resources will be employed by all parties and the Court even in advance of any eventual trial.  See, e.g., Broadcast Innovation, L.L.C. v. Charter Communications, Inc., No. 03-cv-2223-ABJ-BNB, 2006 U.S. Dist. LEXIS 46623, at *26-31 (D. Colo. July 11, 2006) (granting stay, in part, because of significant work remaining on motions for summary judgement, even though trial date was less than three months away).

Plaintiff claims Defendants delayed filing their request for reexamination to gain a tactical advantage over it.  He claims that Defendants were aware of the prior art that they reference in their reexamination request over seven months ago, but purposely delayed so that the '184 Patent would expire during the reexamination process, thereby precluding Plaintiff from offering any amendments to the claims.  Defendants respond that there was no intentional delay and that their decision to request reexamination was based, in part, on the Supreme Court decision in KSR International Co. v. Teleflex Inc., 127 S. Ct. 1727 (2007), which was only issued at the end of April.  The Court is not convinced that Defendants

---

[1] In reaching this determination, the Court has considered the surreply submitted by Plaintiff and, therefore, the pending ex parte request to file a surreply [Doc. #201] is **GRANTED**.

employed any improper tactics in filing their request for reexamination. While Plaintiff is rightfully concerned that a reexamination in the twilight of his patent puts him at a distinct disadvantage, he could have prevented this situation by filing suit many years ago, thereby allowing sufficient time for any reexamination to occur before the patent expired.

Therefore, Plaintiff's cognizable claims of prejudice if a stay should be entered basically boil down to his inconvenience in delaying final collection of any monetary award of royalties, assuming he ultimately wins. However, as the court recognized in Broadcast, the prejudice factor "is best summarized by one question: *do the Plaintiffs have an adequate remedy at law?*" 2006 U.S. Dist. LEXIS 46623, at *32. Just as in Broadcast, the answer here is that clearly Plaintiff does have an adequate remedy. Defendants point out, and Plaintiff has not disputed, that the '184 Patent will expire in February 2008 independent of reexamination. Given that a trial on the merits could not occur prior to that date, Plaintiff would not have been granted any injunctive relief by this Court. Therefore, his claim would be restricted to past monetary damages, which, with the addition of prejudgment interest, are fully capable of compensating Plaintiff. Unfortunately, reexamination can be a drawn out process, resulting in a significant delay in court proceedings. Protracted delay is always a risk inherent in granting a stay, yet courts continue to stay actions pending reexamination. The general prejudice of having to wait for resolution is not a persuasive reason to deny the motion for stay. An average delay for reexamination of approximately 18-23 months is especially inconsequential where Plaintiff himself waited as many as twelve years before bringing the present litigation. (See PTO Reexamination Statistics at Ex. B to Niro Decl.; Doc. #180-3.)

In addition, the Federal Circuit has recently confirmed that the PTO would not be bound in its reexamination by the determinations of this Court. In re Trans Texas Holdings Corp., 2006-1599 and 2006-1600, 2007 U.S. App. LEXIS 19909, at *14-19 (Fed. Cir. Aug. 22, 2007). Because of this, the Court finds that not only is Plaintiff unlikely to be prejudiced in these proceedings by a stay pending the PTO reexamination, but Defendants would potentially be prejudiced by *failing* to enter a stay. One court has explained this possibility

06cv1572

1 accordingly:

> Not only could the Court and the PTO reach conflicting determinations, but one possible scenario could result in irreparable harm to [Defendant]: if this Court finds that the [patent] is not invalid and that [Defendant] has infringed it, and orders [Defendant] to pay damages to [Plaintiff] for such infringement, then [Defendant] would have no ability to recover those damages if at a later date the PTO determined that the [] patent is invalid.

Bausch & Lomb, Inc. v. Alcon Lab., Inc., 914 F. Supp. 951, 952 (W.D.N.Y. 1996). The Court finds such a possibility to be, at a minimum, a highly undesirable outcome.

Finally, the Court finds that the stay will result in the simplification of issues in this case. As explained by the Federal Circuit, "[o]ne purpose of the reexamination procedure is to eliminate trial of [the issue of patent claim validity] (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983), cert. denied, 464 U.S. 935 (1983). The Broadcast court, elaborating on this point, explained:

> Shifting the patent validity issue to the PTO has many advantages, including:
>
> 1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.
>
> 2. Many discovery problems relating to prior art can be alleviated by the PTO examination.
>
> 3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.
>
> 4. The outcome of the reexamination may encourage a settlement without the further use of the Court.
>
> 5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.
>
> 6. Issues, defenses, and evidence will be more easily limited in final pretrial conferences after a reexamination.
>
> 7. The cost will likely be reduced both for the parties and the Court.

2006 U.S. Dist. LEXIS 46623, at *9-10 (quoting Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., 3 U.S.P.Q.2d 1889, 1890 (N.D. Ill. 1987)).

The Court believes that it will benefit from the PTO's evaluation of how the previously

1    unconsidered prior art references impact the claims of the patent-in-suit. The PTO's expert

2    evaluation is likely to be of assistance not only as to the issues of validity, but its

3    understanding of the claims is also likely to aid this Court in the preliminary process of claim

4    construction.

5          The Court finds that, especially in this case, the reexamination process has the

6    potential to significantly narrow the issues for trial because of the impending expiration of the

7    '184 Patent.  While the parties have argued at length about exactly how this additional

8    variable affects the calculation of the likely outcome of reexamination, the Court need not

9    resolve this dispute to reach the proper conclusion.  It is enough to note that when

10   reexamination is requested by a third party, as in this case, all claims are confirmed only 29%

11   of the time. (See PTO Reexamination Statistics at Ex. B to Niro Decl.; Doc. #180-3.)  Since

12   no amendments can be offered to an expired patent, there is obviously a significant likelihood

13   that the validity of the claims at issue in this action will be affected by the reexamination

14   process.[2]

15         In addition, the Court expects that the reexamination process will not only aid the

16   Court in these proceedings, but should also redound to the benefit of the parties, both

17   Defendants and Plaintiff.  As the Broadcast court explained in its discussion of the possibility

18   of prejudice from entering a stay:

19            If the PTO does not invalidate or otherwise alter the claims of the [] patent,
              the Plaintiffs' legal remedy remains unaffected . . . . Moreover, if the claims
20            are narrowed, both sets of parties will have benefitted by avoiding the
              needless waste of resources before this Court, and again, the Plaintiffs will
21            be able to pursue their claim for money damages at trial.  Finally, if the claims
              are strengthened, the Plaintiffs' position will be as well, and their likelihood
22            of monetary damages will increase. See, e.g., Motson, 2005 U.S. Dist.
              LEXIS, 2005 WL 3465664 at *1 ("[I]f the PTO upholds the validity of plaintiff's
23            patent, 'the plaintiff's rights will only be strengthened, as the challenger's
              burden of proof becomes more difficult to sustain.'") (quoting Pegasus Dev.
24            Corp., 2003 U.S. Dist. LEXIS 8052, 2003 WL 21105073 at *2).

25

26   _____

         [2] Plaintiff has argued that the PTO is unlikely to grant reexamination precisely because
27   the '184 Patent will expire soon.  However, Plaintiff failed to produce any evidence to support
     this contention.  Moreover, even if Plaintiff is correct, and the PTO fails to grant
28   reexamination (a decision which should issue no later than October 30, 2007), this Court
     would immediately lift the stay and these proceedings would continue – a relatively
     insignificant 2-month delay being all that would result.

1  2006 U.S. Dist. LEXIS 46623, at *32-33.  Accordingly, the Court finds that a stay is

2  appropriate to avoid the risk of unnecessary litigation and to permit the clarification of issues

3  before this Court.

4      Therefore, Defendants' motion to stay this litigation is **GRANTED IN PART** and

5  **DENIED IN PART**.  With the exception of two pending motions, all proceedings are hereby

6  stayed pending the PTO's reexamination of the '184 Patent.  The Court will continue to hear

7  Plaintiff's pending motion for entry of default against Defendant Porter-Cable Corporation

8  [Doc. #182], which is calendared for hearing on October 12, 2007.  As was discussed above

9  in Section I, the Court will also continue to hear B&D's pending motion for reconsideration

10  of Magistrate Judge Bencivengo's August 3, 2007 order regarding production of Dennis

11  Dearing's attorney work product [Doc. #240], which is calendared for hearing on November

12  2, 2007.  The Clerk is directed to **VACATE** all scheduled discovery hearings, as well as the

13  claim construction hearing previously set for November 19, 2007.  All hearing dates will be

14  reset, to the extent appropriate, once the stay of these proceedings has been lifted.

15      Defendants are ordered to file a notice informing the Court of the PTO's decision on

16  the pending application for reexamination within 10 days of receipt of such decision.  If the

17  PTO declines B&D's request to reexamine the '184 Patent, the Court will immediately lift the

18  stay and recalendar all vacated hearing dates.  If, however, the PTO approves

19  reexamination, this stay will remain in place pending some resolution of those proceedings.

20  During the pendency of the reexamination, Defendants will be required to file a notice every

21  6 months apprising the Court of any change in the status of those proceedings.

22

23  **IV.    Motion for Partial Summary Judgment**

24      On August 30, 2007, Plaintiff filed a motion for partial summary judgment piercing the

25  corporate veils of the Black & Decker Defendants, or in the alternative, holding them to be

26  a single enterprise for purposes of patent infringement liability.  [Doc. #204.]  The motion is

27  presently calendared for hearing on October 26, 2007.  In light of the Court's entry of a stay

28  of these proceedings pending the PTO patent reexamination, the Court finds Plaintiff's

motion to be premature.  Accordingly, the Court hereby **DENIES** Plaintiff's motion without prejudice.[3]  As the Court is aware of the substantial volume of Plaintiff's motion, he is invited to refile this motion once the stay has been lifted by simply filing a short notice of motion which incorporates by reference his earlier filing.

**IT IS SO ORDERED.**

DATED:  September 10, 2007

Honorable Barry Ted Moskowitz
United States District Judge

---

[3] Plaintiff's pending motion to file confidential documents under seal in support of the motion for partial summary judgment [Doc. #204-5] is also **DENIED** as moot.

06cv1572

Exhibit 5

Robert S. Mallin
312-321-4221
rmallin@usebrinks.com

**BRINKS**
**HOFER**
**GILSON**
**& LIONE**
®
A Professional Corporation

Intellectual Property
Law Worldwide

*Via Facsimile Transmission to 858-824-9073*
*And U.S. First Class Mail*

March 12, 2008

Melody A. Kramer, Esq.
Kramer Law Office
9930 Mesa Rim Road
Suite 1600
San Diego, CA 92121

Re:  **Sorensen Research & Development Trust v. Emerson Electric Co.** *et al*
     **Case No. 3:08-cv-00060-BTM-CAB**
     **Sorensen Research & Development Trust v. Ryobi Technologies, Inc.** *et al*
     **Case No. 3:08-cv-00070-BTM-CAB**
     **Sorensen Research & Development Trust v. Senco Products, Inc.**
     **Case No. 3:08-cv-00071-BTM-CAB**

Dear Melody:

We plan to file a motion to stay in each of the above-referenced lawsuits.  The bases for the motions will be similar to the reasons why Judge Moskowitz ordered stays in the SRDT litigations with Black & Decker, Giant International, and Helen of Troy.

Please advise me if you will be opposing the motions to stay and, if so, on what basis.  We would prefer not to be required to file a contested motion if there is no basis for opposition different from those that the court has already rejected.

Best regards,

Robert S. Mallin

RSM:jms

cc:   Orlando F. Cabandy, Esq.
      Roger G. Perkins, Esq.

Exhibit 6

## Kramer Law Office, Inc.

9930 Mesa Rim Rd., Ste. 1600
San Diego, California 92121
Phone 858/362-3150
Fax 858/824-9073

**Melody A. Kramer, Esq.**
mak@kramerlawip.com

VIA FAX 312-321-4221 ONLY

March 12, 2008

Mr. Robert S. Mallin
Brinks Hofer Gilson & Lione
NBC Tower, Suite 3600
455 N. Cityfront Plaza Drive
Chicago, IL 60611-5599

RE:   Sorensen Research & Development Trust v. Emerson Electric, et al
      USDC Southern District of California, Case No. 08cv00060
      Sorensen Research & Development Trust v. Ryobi Technologies, et al
      USDC Southern District of California, Case No. 08cv00070
      Sorensen Research & Development Trust v. Senco Products, Inc., et al
      USDC Southern District of California, Case No. 08cv00071

Dear Mr. Mallin:

    I have received your letter of this date advising us that your clients intend to file motions to stay.  Thank you for the advisement.  We intend to oppose those motions.

Sincerely,

Melody A. Kramer

cc:   Orlando F. Cabanday – 310/305-2116 fax
      Roger G. Perkins – 619/557-0460 fax

Exhibit 7



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.go

*Ex Parte* Reexamination Filing Data  - June 30, 2006

1.  Total requests filed since start of ex parte reexam on 07/01/81......................................8084

| | | |
|---|---|---|
| a.  By patent owner | 3313 | 41% |
| b.  By other member of public | 4606 | 57% |
| c.  By order of Commissioner | 165 | 2% |

2.  Number of filings by discipline

| | | |
|---|---|---|
| a.  Chemical Operation | 2496 | 31% |
| b.  Electrical Operation | 2608 | 32% |
| c.  Mechanical Operation | 2980 | 37% |

3.  Annual Ex Parte Reexam Filings

| Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. |
|---|---|---|---|---|---|---|---|
| 1981 | 78 (3 mos.) | 1989 | 243 | 1997 | 376 | 2005 | 524 |
| 1982 | 187 | 1990 | 297 | 1998 | 350 | 2006 | 340 |
| 1983 | 186 | 1991 | 307 | 1999 | 385 | | |
| 1984 | 189 | 1992 | 392 | 2000 | 318 | | |
| 1985 | 230 | 1993 | 359 | 2001 | 296 | | |
| 1986 | 232 | 1994 | 379 | 2002 | 272 | | |
| 1987 | 240 | 1995 | 392 | 2003 | 392 | | |
| 1988 | 268 | 1996 | 418 | 2004 | 441 | | |

4.  Number known to be in litigation..................................................1895    23%

5.  Determinations on requests.........................................................................7852

a.  No. granted ..................................................................... 7160 .................. 91%

| | |
|---|---|
| (1)  By examiner | 7054 |
| (2)  By Director (on petition) | 106 |

b.  No. denied ...................................................................... 692 .................... 9%

| | |
|---|---|
| (1)  By examiner | 657 |
| (2)  Order vacated | 35 |

Saved as http://www.schmoller.net/documents/ex_partes_to_20060630.pdf

6.  Total examiner denials (includes denials reversed by Director).......................................763

    a.  Patent owner requester                                             430      56%
    b.  Third party requester                                             333      44%

7.  Overall reexamination pendency  (Filing date to certificate issue date)

    a.  Average pendency                       22.8  (mos.)
    b.  Median pendency                        17.6  (mos.)

8. Reexam certificate claim analysis:

| | Owner Requester | 3rd Party Requester | Comm'r Initiated | Overall |
|---|---|---|---|---|
| a.  All claims confirmed | 23% | 29% | 13% | 26% |
| b.  All claims cancelled | 7% | 12% | 19% | 10% |
| c.  Claims changes | 70% | 59% | 68% | 64% |

9.  Total ex parte reexamination certificates issued (1981 - present)...................................5433

    a.  Certificates with all claims confirmed           1410    26%
    b.  Certificates with all claims canceled            554    10%
    c.  Certificates with claims changes              3469    64%

10.  Reexam claim analysis - requester is patent owner or 3rd party; or Comm'r initiated.

    a.  Certificates _ PATENT OWNER REQUESTER.....................................................2360

        (1)  All claims confirmed                543    23%
        (2)  All claims canceled                 174     7%
        (3)  Claim changes                    1643    70%

    b.  Certificates _ 3rd PARTY REQUESTER.............................................................2934

        (1)  All claims confirmed                849    29%
        (2)  All claims canceled                 353    12%
        (3)  Claim changes                    1732    59%

    c.  Certificates _ COMM'R INITIATED REEXAM ....................................................139

        (1)  All claims confirmed                 18    13%
        (2)  All claims canceled                 27    19%
        (3)  Claim changes                    94    68%

Exhibit 8

 **United States Patent and Trademark Office**    **PATENTS**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

Patents > Search Colections > MPEP > 2250 Amendment by Patent Owner [R-5] - 2200 Citation of Prior Art and Ex Parte Reexamination of Patents

Go to **MPEP - Table of Contents**

browse before

# 2250 Amendment by Patent Owner [R-5] - 2200 Citation of Prior Art and Ex Parte Reexamination of Patents

## 2250 Amendment by Patent Owner [R-5]

### 37 CFR 1.121 Manner of making amendments in application.

*****

(j) *Amendments in reexamination proceedings.* Any proposed amendment to the description and claims in patents involved in reexamination proceedings must be made in accordance with § **1.530**.

---

### 37 CFR 1.530 Statement by patent owner in *ex parte* reexamination; amendment by patent owner in *ex parte* or *inter partes* reexamination; inventorship change in *ex parte* or *inter partes* reexamination.

*****

(d) *Making amendments in a reexamination proceeding.* A proposed amendment in an *ex parte* or an *inter partes* reexamination proceeding is made by filing a paper directing that proposed specified changes be made to the patent specification, including the claims, or to the drawings. An amendment paper directing that proposed specified changes be made in a reexamination proceeding may be submitted as an accompaniment to a request filed by the patent owner in accordance with § **1.510(e)**, as part of a patent owner statement in accordance with paragraph (b) of this section, or, where permitted, during the prosecution of the reexamination proceeding pursuant to § **1.550(a)** or § **1.937**.

(1) *Specification other than the claims.* Changes to the specification, other than to the claims, must be made by submission of the entire text of an added or rewritten paragraph including markings pursuant to paragraph (f) of this section, except that an entire paragraph may be deleted by a statement deleting the paragraph, without presentation of the text of the paragraph. The precise point in the specification must be identified where any added or rewritten paragraph is located. This paragraph

applies whether the amendment is submitted on paper or compact disc (*see* §§ **1.96** and **1.825**).

(2) *Claims.* An amendment paper must include the entire text of each patent claim which is being proposed to be changed by such amendment paper and of each new claim being proposed to be added by such amendment paper. For any claim changed by the amendment paper, a parenthetical expression "amended," "twice amended," *etc.*, should follow the claim number. Each patent claim proposed to be changed and each proposed added claim must include markings pursuant to paragraph (f) of this section, except that a patent claim or proposed added claim should be canceled by a statement canceling the claim, without presentation of the text of the claim.

(3) *Drawings.* Any change to the patent drawings must be submitted as a sketch on a separate paper showing the proposed changes in red for approval by the examiner. Upon approval of the changes by the examiner, only new sheets of drawings including the changes and in compliance with § **1.84** must be filed. Amended figures must be identified as "Amended," and any added figure must be identified as "New." In the event a figure is canceled, the figure must be surrounded by brackets and identified as "Canceled."

(4) The formal requirements for papers making up the reexamination proceeding other than those set forth in this section are set out in § **1.52**.

(e) *Status of claims and support for claim changes.* Whenever there is an amendment to the claims pursuant to paragraph (d) of this section, there must also be supplied, on pages separate from the pages containing the changes, the status (*i.e.*, pending or canceled), as of the date of the amendment, of all patent claims and of all added claims, and an explanation of the support in the disclosure of the patent for the changes to the claims made by the amendment paper.

(f) *Changes shown by markings.* Any changes relative to the patent being reexamined which are made to the specification, including the claims, must include the following markings:

(1) The matter to be omitted by the reexamination proceeding must be enclosed in brackets; and

(2) The matter to be added by the reexamination proceeding must be underlined.

(g) *Numbering of patent claims preserved.* Patent claims may not be renumbered. The numbering of any claims added in the reexamination proceeding must follow the number of the highest numbered patent claim.

(h) *Amendment of disclosure may be required.* The disclosure must be amended, when required by the Office, to correct inaccuracies of description and definition, and to secure substantial correspondence between the claims, the remainder of the specification, and the drawings.

(i) *Amendments made relative to patent.* All amendments must be made relative to

the patent specification, including the claims, and drawings, which are in effect as of the date of filing the request for reexamination.

(j) *No enlargement of claim scope.* No amendment may enlarge the scope of the claims of the patent or introduce new matter. No amendment may be proposed for entry in an expired patent. Moreover, no amendment, other than the cancellation of claims, will be incorporated into the patent by a certificate issued after the expiration of the patent.

(k) *Amendments not effective until certificate.* Although the Office actions will treat proposed amendments as though they have been entered, the proposed amendments will not be effective until the reexamination certificate is issued.

*****

**37 CFR 1.52 Language, paper, writing, margins, compact disc specifications.**

(a) *Papers that are to become a part of the permanent United States Patent and Trademark Office records in the file of a patent application or a reexamination proceeding.*

(1) All papers, other than drawings, that are submitted on paper or by facsimile transmission, and are to become a part of the permanent United States Patent and Trademark Office records in the file of a patent application or reexamination proceeding, must be on sheets of paper that are the same size, not permanently bound together, and:

(i) Flexible, strong, smooth, non-shiny, durable, and white;

(ii) Either 21.0 cm by 29.7 cm (DIN size A4) or 21.6 cm by 27.9 cm (8 1/2 by 11 inches), with each sheet including a top margin of at least 2.0 cm (3/4 inch), a left side margin of at least 2.5 cm (1 inch), a right side margin of at least 2.0 cm (3/4 inch), and a bottom margin of at least 2.0 cm (3/4 inch);

(iii) Written on only one side in portrait orientation;

(iv) Plainly and legibly written either by a typewriter or machine printer in permanent dark ink or its equivalent; and

(v) Presented in a form having sufficient clarity and contrast between the paper and the writing thereon to permit the direct reproduction of readily legible copies in any number by use of photographic, electrostatic, photo-offset, and microfilming processes and electronic capture by use of digital imaging and optical character recognition.

(2) All papers that are submitted on paper or by facsimile transmission and are to become a part of the permanent records of the United States Patent and Trademark Office should have no holes in the sheets as submitted.

(3) The provisions of this paragraph and paragraph (b) of this section do not apply to the pre-printed information on paper forms provided by the Office, or to the copy of the patent submitted on paper in double column format as the specification in a reissue application or request for reexamination.

(4) *See* § **1.58** for chemical and mathematical formulae and tables, and § **1.84** for drawings.

(5) Papers that are submitted electronically to the Office must be formatted and transmitted in compliance with the Office's electronic filing system requirements.

(b) *The application (specification, including the claims, drawings, and oath or declaration) or reexamination proceeding and any amendments or corrections to the application or reexamination proceeding.*

(1) The application or proceeding and any amendments or corrections to the application (including any translation submitted pursuant to paragraph (d) of this section) or proceeding, except as provided for in § **1.69** and paragraph (d) of this section, must:

(i) Comply with the requirements of paragraph (a) of this section; and

(ii) Be in the English language or be accompanied by a translation of the application and a translation of any corrections or amendments into the English language together with a statement that the translation is accurate.

(2) The specification (including the abstract and claims) for other than reissue applications and reexamination proceedings, and any amendments for applications (including reissue applications) and reexamination proceedings to the specification, except as provided for in §§ **1.821** through **1.825**, must have:

(i) Lines that are 1 1/2 or double spaced;

(ii) Text written in a nonscript type font (*e.g.*, Arial, Times Roman, or Courier, preferably a font size of 12) lettering style having capital letters which should be at least 0.3175 cm. (0.125 inch) high, but may be no smaller than 0.21 cm. (0.08 inch) high (*e.g.*, a font size of 6); and

(iii) Only a single column of text.

(3) The claim or claims must commence on a separate physical sheet or electronic page (§ **1.75(h)**).

(4) The abstract must commence on a separate physical sheet or electronic page or be submitted as the first page of the patent in a reissue application or reexamination proceeding (§ **1.72(b)**).

*****

**

Amendments to the patent (one which has not expired) may be filed by the patent owner with his or her request. See **MPEP § 2221**. Such amendments, however, may not enlarge the scope of a claim of the patent or introduce new matter. Amended or new claims which broaden or enlarge the scope of a claim of the patent should be rejected under **35 U.S.C. 305**. The test for when an amended or "new claim enlarges the scope of an original claim under **35 U.S.C. 305** is the same as that under the 2-year limitation for reissue applications adding enlarging claims under **35 U.S.C. 251**, last paragraph." *In re Freeman,* 30 F.3d 1459, 1464, 31 USPQ2d 1444, 1447 (Fed. Cir. 1994). See **MPEP § 2258** for a discussion of enlargement of claim scope. For handling of new matter, see **MPEP § 2270**. Amendments proposed in a reexamination will normally be entered and be considered to be entered for purposes of prosecution before the Office (if they are timely and comply with the rules); however, the amendments do not become effective in the patent until the reexamination certificate under **35 U.S.C. 307** is issued.

No amendment will be permitted where the certificate issues after expiration of the patent. See **37 CFR 1.530**(d)(3). The patent expiration date for a utility patent, for example, is determined by taking into account the term of the patent, whether maintenance fees have been paid for the patent, whether any disclaimer was filed as to the patent to shorten its term, any patent term extensions or adjustments for delays within the USPTO under 35 U.S.C. **154** (see MPEP § **2710** *et seq.*), and any patent term extensions available under 35 U.S.C. **156** for premarket regulatory review (see MPEP § **2750** *et. seq.*). Any other relevant information should also be taken into account.

*Amendment Entry* - Amendments which comply with **37 CFR 1.530(d)**-(j) (and are formally presented pursuant to 37 CFR **1.52(a)** and (b), and contain all fees required by 37 CFR **1.20**(c)) will be entered in the reexamination file pursuant to the guidelines set forth in **MPEP § 2234**.

### I.    MANNER OF MAKING AMENDMENTS IN REEXAMINATION PROCEEDINGS

Amendments made in a reexamination proceeding must comply with the formal requirements of 37 CFR 1.52(a) and (b), as do all papers that are to become a part of the permanent USPTO file records in a patent application or proceeding. If an amendment is submitted to add claims to the patent being reexamined (i.e., to provide new claims), then excess claim fees pursuant to 37 CFR **1.20**(c)(3) and (4) may be applicable to the presentation of the added claims. See MPEP § **2250.03**. In addition, the provisions of **37 CFR 1.530(d)**-(k) uniquely apply to amendments in both *ex parte* and *inter partes* reexamination proceedings, as follows.

### A.    The Specification

**37 CFR 1.530(d)**(1) relates to the manner of making amendments to the reexamination "specification" (other than the claims). It is not to be used for making amendments to the claims or the drawings.

**37 CFR 1.530(d)**(1) requires that all amendments, which include any deletions or additions, must be made by submission of the full text of any paragraph to be changed in any manner, with markings (brackets and underlining) showing the changes. It should be noted that examiner's amendments made at the time when the Notice of Intent to Issue Reexamination Certificate (NIRC) is prepared also require the full text of any paragraph to be changed, with markings. The exception for examiner's amendment set forth in 37 CFR **1.121(g)** does **not** apply to examiner's amendments in reexamination proceedings. It should further be noted that the requirement of 37 CFR **1.530(d)(1)** applies regardless of whether the amendment is submitted on paper or on compact disc (pursuant to 37 CFR **1.96** or **1.825**). The only exception to this requirement is that an entire paragraph of specification text may be deleted from the specification by a statement deleting the paragraph without the presentation of the text of the paragraph.

In accordance with 37 CFR **1.530(d)(1)**, all paragraphs which are added to the specification must be submitted as completely underlined.

**37 CFR 1.530(d)**(1) requires that the precise point where each amendment is to be made must be indicated.

**37 CFR 1.530(d)**(1) defines the "markings" by reference to **37 CFR 1.530(f)** as being brackets for deletion and underlining for addition. All bracketing and underlining is made in comparison to the original patent; not in comparison with the prior amendment.

Where a change is made in one sentence, paragraph or page of the patent, and the change increases or decreases the size of the sentence, paragraph or page, this will have no effect on the body of the reexamination "specification" (the copy of the patent). This is because all insertions are made as blocked additions of paragraphs, which are not physically inserted within the specification papers. Rather, each blocked paragraph is assigned a letter and number, and a caret written in the specification papers indicates where the blocked paragraph is to be incorporated. Therefore, a reexamination patent owner need not be concerned with page formatting considerations when presenting amendments to the Office.

**B.    The Claims**

**37 CFR 1.530(d)**(2) relates to the manner of making amendments to the claims in a reexamination proceeding. It is not to be used for making amendments to the remainder of the specification or to the drawings.

**37 CFR 1.530(d)**(2) requires that:

(A) for each claim that is proposed to be amended by the amendment paper being submitted (the current amendment paper), the entire text of the claim must be presented with appropriate markings showing the changes to the claim;

(B) for each proposed new claim which is added in the reexamination by the amendment paper being submitted (the current amendment paper), the entire text of the proposed new claim must be presented and it must be underlined

throughout;

(C) a patent claim is canceled by a direction to cancel that claim, there is no need to present the text of the patent claim surrounded by brackets; and

(D) a proposed new claim (previously added in the reexamination) is canceled by a direction to cancel that claim.

It should be noted that examiner's amendments made at the time when the Notice of Intent to Issue Reexamination Certificate (NIRC) is prepared also require the full text of any claim to be changed, with markings. The exception for examiner's amendment set forth in 37 CFR **1.121(g)** does **not** apply to examiner's amendments in reexamination proceedings. It should further be noted that the requirements of 37 CFR **1.530(d)(2)** apply regardless of whether the amendment is submitted on paper or on compact disc (pursuant to 37 CFR **1.96** or **1.825**).

In accordance with 37 CFR **1.530(e)**, each amendment submitted must set forth the status of all patent claims and all added claims as of the date of the submission. The status to be set forth is whether the claim is pending, or canceled. The failure to submit the claim status will generally result in a notification to the patent owner of an informal response (see MPEP § **2266.02**) prior to final rejection. Such an amendment submitted after final rejection will not be entered.

Also in accordance with 37 CFR **1.530(e)**, each claim amendment must be accompanied by an explanation of the support in the disclosure of the patent for the amendment (i.e., support for the changes made in the claim(s), support for any insertions and deletions). The failure to submit an explanation will generally result in a notification to the patent owner that the amendment prior to final rejection is not completely responsive since the failure to set forth the support in the disclosure goes to the merits of the case (see MPEP § **2266.01**). Such an amendment submitted after final rejection will not be entered.

**37 CFR 1.530(f)** identifies the type of markings required in the claim to be amended as underlining for added material and single brackets for material deleted.

**37 CFR 1.530(g)** states that original patent claims may not be renumbered. A patent claim retains its number even if it is canceled in the reexamination proceeding, and the numbering of any added claims must begin after the last original patent claim.

**C.  The Drawings**

With respect to amendment of the drawings in a reexamination proceeding, see **MPEP § 2250.01**.

Form paragraph **22.12** may be used to advise patent owner of the proper manner of making amendments in an *ex parte* reexamination proceeding.

**D.  *Form Paragraphs* - Ex Parte Reexamination**

¶ 22.12 Amendments Proposed in a Reexamination - 37 CFR 1.530(d)-(j)

Patent owner is notified that any proposed amendment to the specification and/or claims in this reexamination proceeding must comply with **37 CFR 1.530(d)-(j)**, must be formally presented pursuant to **37 CFR 1.52**(a) and (b), and must contain any fees required by **37 CFR 1.20**(c).

**Examiner Note**

This paragraph may be used in the order granting reexamination and/or in the first Office action to advise patent owner of the proper manner of making amendments in a reexamination proceeding.

¶ 22.13 Improper Amendment in an Ex Parte Reexamination - 37 CFR 1.530(d)-(j)

The amendment filed **[1]** proposes amendments to **[2]** that do not comply with **37 CFR 1.530(d)**-(j), which sets forth the manner of making amendments in reexamination proceedings. A supplemental paper correctly proposing amendments in the present *ex parte* reexamination proceeding is required.

A shortened statutory period for response to this letter is set to expire ONE MONTH or THIRTY DAYS, whichever is longer, from the mailing date of this letter. If patent owner fails to timely correct this informality, the amendment will be held not to be an appropriate response, prosecution of the present *ex parte* reexamination proceeding will be terminated, and a reexamination certificate will issue. **37 CFR 1.550(d)**.

**Examiner Note**

This paragraph may be used for any **37 CFR 1.530(d)-(j)** informality as to a proposed amendment submitted in a reexamination proceeding prior to final rejection. After final rejection, the amendment should not be entered and patent owner informed of such in an advisory Office action using Form PTOL 467.

The cover sheet to be used for mailing the notification to the patent owner will be PTOL-473.

As an alternative to using form paragraph **22.13**, it would also be appropriate to use form PTOL-475.

Note that if the informal amendment is submitted after final rejection, form paragraph **22.13** and form PTOL-475 should not be used. Rather an advisory Office action (using form PTOL-467) should be issued indicating that the amendment was not entered. In the "Other" section, it should be explained that the amendment was not entered because it does not comply with **37 CFR 1.530(d)**-(j), which sets forth the manner of making amendments in reexamination proceedings.

E.   Form Paragraphs - Inter Partes Reexamination

See MPEP § **2666.01** for the form paragraphs to use in *inter partes* reexamination

proceedings, in advising the patent owner as to the manner of making amendments.

## II.   ALL CHANGES ARE MADE *VIS-A-VIS* THE PATENT BEING REEXAMINED

When a reexamination certificate is printed, all underlined matter is printed in italics and all brackets are printed as they were inserted in the proceeding in order to thereby show exactly which additions and deletions have been made in the patent via the reexamination proceeding. In accordance with **37 CFR 1.530(i)**, all amendments to the patent being reexamined must be made relative to the patent specification in effect as of the date of the filing of the request for reexamination. The patent specification includes the claims and drawings. If there was a prior change to the patent (made via a prior reexamination certificate, reissue of the patent, certificate of correction, etc.), the first amendment must be made relative to the patent specification as changed by the prior proceeding or other mechanism for changing the patent. All amendments subsequent to the first amendment must also be made relative to the patent specification in effect as of the date of the filing of the request for reexamination, and not relative to the prior amendment.

## III.   AMENDMENT AFTER THE PATENT HAS EXPIRED

Pursuant to 37 CFR **1.530(j)**, "[n]o amendment may be proposed for entry in an expired patent." Thus, if a patent expires during the pendency of a reexamination proceeding for a patent, all amendments to the patent claims and all claims added during the proceeding are withdrawn. This is carried out by placing a diagonal line across all amended and new claims (and text added to the specification) residing in the amendment papers. The patent owner should be notified of this in the next Office action. The Office action will hold the amendments to be improper, and state that all subsequent reexamination will be on the basis of the unamended patent claims. This procedure is necessary since no amendments will be incorporated into the patent by a certificate after the expiration of the patent.

37 CFR **1.530(j)** further states that "[m]oreover, no amendment, other than the cancellation of claims, will be incorporated into the patent by a certificate issued after the expiration of the patent."

Thus, at the time the NIRC is to be issued, the examiner should ensure that all rejected and objected to claims are canceled. The examiner should issue an examiner's amendment canceling any such claims not already canceled.

The cancellation of the original patent claims is the only "amendatory" change permitted in an expired patent.

## IV.   EXAMPLES

A substantial number of problems arise in the Office because of improper submission of proposed amendments in reexamination proceedings. The following examples are provided to assist in the preparation of proper proposed amendments in reexamination proceedings.

(A) Original Patent Description Or Patent Claim Amended

(1) Specification - submit a copy of the entire paragraph (of the specification of the patent) being amended with underlining and bracketing. Thus, the amendment would be presented as follows:

Replace the paragraph beginning at column 4, line 23 with the following:

Scanning [is] are controlled by clocks which are, in turn, controlled from the display tube line synchronization. The signals resulting from scanning the scope of the character are delivered in parallel, then converted into serial mode through a shift register, wherein the shift signal frequency is controlled by a clock that is controlled from the display tube line synchronization.

(2) Claims - for changes to the patent claims, one must submit a copy of the entire patent claim with the amendments shown by underlining and bracketing. Thus, the amendment would be presented as follows:

Amend claim 6 as follows:

Claim 6. (amended), The apparatus of claim [5] 1 wherein the [first] second piezoelectric element is parallel to the [second] third piezoelectric element.

If the dependency of any original patent claim is to be changed by amendment, it is proper to make that original patent claim dependent upon a later filed higher numbered claim.

(B) Cancellation of Entire Claim(s)

(1) Original patent claim canceled - in writing, direct cancellation of the entire patent claim.

Cancel claim 6.

(2) Proposed new claim (previously added in the reexamination) canceled - in writing, direct cancellation of the entire claim.

Cancel claim 15.

(C) Presentation Of New Claims Each proposed new claim (i.e., a claim not found in the patent, that is newly presented in the reexamination proceeding) should be presented with underlining throughout the claim.

Claim 7. The apparatus of claim 5 further comprising electrodes attaching to said opposite faces of the second and third piezoelectric elements.

Even though an original claim may have been canceled, the numbering of the original claims does not change. Accordingly, any added claims are numbered beginning with the next higher number than the number of claims in the original patent. If new claims have been added to the reexamination proceeding which are

later canceled prior to the issuance of the reexamination certificate, the examiner will renumber, at the time of preparing the NIRC for subsequent issuance of the certificate, any remaining new claims in numerical order to follow the highest number of the claims in the original patent. A claim number previously assigned to a new claim that has been canceled should not be reassigned to a different new claim during the reexamination proceeding. For example, if new claim 5 added in a prior amendment is canceled in a later amendment, a different new claim added in a later amendment during the reexamination proceeding would be claim 6. Of course, at the time of preparing the NIRC, claim 6 would be renumbered for issue of the reexamination certificate as claim 5.

(D) Amendment Of New Claims An amendment of a new claim (i.e., a claim not found in the patent, that was previously presented in the reexamination proceeding) must present the entire text of the new claim containing the amendatory material, and it must be underlined throughout the claim. The presentation cannot contain any bracketing or other indication of what was in the previous version of the claim. This is because all changes in the reexamination are made *vis-a-vis* the original patent, and not in comparison with any prior amendment. Although the presentation of the amended claim does not contain any indication of what is changed from a previous version of the claim, patent owner must point out what is changed, in the "Remarks" portion of the amendment. Also, as per **37 CFR 1.530(e)**, each change made in the claim must be accompanied by an explanation of the support in the disclosure of the patent (i.e., the reexamination specification) for the change.

(E) Amendment Of Original Patent Claims More Than Once The following example illustrates proper claim amendment of original patent claims in reexamination proceedings, where more than one amendment to a claim is made:

(1) Patent claim.

Claim 1. A cutting means having a handle portion and a blade portion.

(2) Proper first amendment format.

Claim 1. (amended), A [cutting means] knife having a bone handle portion and a notched blade portion.

(3) Proper second amendment format.

Claim 1. (twice amended), A [cutting means] knife having a handle portion and a serrated blade portion.

Note that the second amendment must include (1) the changes previously presented in the first amendment; i.e., [cutting means] knife, as well as (2) the new changes presented in the second amendment; i.e., serrated. The word bone was presented in the first amendment and is now to be deleted in the second amendment. Thus, "bone" is NOT to be shown in brackets in the second amendment. Rather, the word "bone" is simply omitted from the claim, since "bone" never appeared in the patent. The word notched which was presented in the first amendment is replaced by the word serrated in the second amendment. The word

notched is being deleted in the second amendment and did not appear in the patent; accordingly, "notched" is not shown in any form in the claim. The word serrated is being added in the second amendment, and accordingly, "serrated" is added to the claim and is underlined. It should be understood that in the second amendment, the deletions of "notched" and "bone" are not changes from the original patent claim text and therefore, are not shown in the second amendment. In both the first and the second amendments, the entire claim is presented only with the changes from the original patent text. If the patent expires during an *ex parte* or *inter partes* reexamination proceeding and the patent claims have been amended in that *ex parte* reexamination proceeding, the Office will hold the amendments as being improper, and all subsequent reexamination will be on the basis of the unamended patent claims. This procedure is necessary since no amendments will be incorporated into the patent by certificate after the expiration of the patent.

## V.   CROSS REFERENCES TO OTHER AREAS

(A) For clerical handling of amendments, see MPEP § **2270** for *ex parte* reexamination proceedings, and see MPEP § **2670** for *inter partes* reexamination proceedings.

(B) As to amendments in a merged proceeding, see MPEP § **2283** for an *ex parte* reexamination merged with another *ex parte* reexamination and MPEP § **2285** for an *ex parte* reexamination merged with a reissue application. If an *inter partes* reexamination proceeding is included in the merger, see MPEP § **2686.01** and § **2686.03**.

(C) As to amendments in a pending reexamination proceeding where a reexamination certificate has issued for the patent based on a prior concluded reexamination, pursuant to MPEP § **2295**, any amendment made in the pending reexamination proceeding must be presented as if the changes made to the patent text via the reexamination certificate (for the prior concluded reexamination) are a part of the original patent. All italicized text of the certificate is considered as if the text was present without italics in the original patent. Further, any text of the reexamination certificate found in brackets is considered as if it were never present in the patent at all. Thus, for making an amendment in the pending reexamination, all italicized text of the reexamination certificate is presented in the amendment without italics. Further, any text found in brackets in the reexamination certificate is omitted in the amendment.

(D) As to amendments in a pending reexamination proceeding where a reissue patent has been granted, pursuant to MPEP § **2285**, subsection II.A., an amendment in a reexamination of a reissued patent is made the same way as in a reexamination of a reexamined patent (i.e., as per MPEP § **2295**). Thus, all italicized text of the reissue patent is presented in the amendment (made in the pending reexamination proceeding) without italics. Further, any text found in brackets in the reissue patent is omitted in the amendment (made in the pending reexamination proceeding).

(E) For handling a dependent claim in reexamination proceedings, see MPEP §

**2260.01**.

**browse after**

---

**KEY**:  ✉ =online business system    ⛁ =fees  ▦ =forms  ✎ =help  ⚖ =laws/regulations  ✎ =definition
(glossary)

---

*The* **Inventors Assistance Center** *is available to help you on patent matters.Send questions about USPTO programs and services to the* **USPTO Contact Center (UCC).** *You can suggest USPTO webpages or material you would like featured in this section by E-mail to the* **webmaster@uspto.gov.** *While we cannot promise to accommodate all requests, your suggestions will be considered and may lead to other improvements on the website.*

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

Last Modified: 12/05/2006 11:38:08

Go to **MPEP - Table of Contents**