# EXHIBIT A

# KALER LAW OFFICES

9930 MESA RIM ROAD
SUITE 200
SAN DIEGO, CALIFORNIA 92121
TELEPHONE: (858) 362-3151
FAX: (858) 824-9073

J. Michael Kaler

michael@kalerlaw.com

Intellectual Property Litigation

September 24, 2004

## Fax No.  302-738-7210

Mr. Fred Pond
President and CEO
Ridgid, Inc.
850 Library Ave.
Newark, DE  19715
302-738-1867

## CONFIDENTIAL OFFER OF COMPROMISE SUBJECT TO FEDERAL RULES OF EVIDENCE § 408

RE:    Ridgid, Inc.'s ("Ridgid") unauthorized usage of the technology taught in United States Patent No. 4,935,184

Dear Mr. Pond:

We have examined several Ridgid products that incorporate tool housings manufactured with plastics with different characteristics.  From our examination, we have determined that the tool housings of a number of these products are substantially likely to be fabricated utilizing a process that infringes United States Patent No. 4,935,184 ("the '184 patent").  Further, our records indicate that Ridgid is not currently licensed to utilize the '184 patented method.

I represent the Sorensen Research & Development Trust ("Trust"), the owner of the '184 patent entitled "Stabilized Injection Molding When Using a Common Mold Part With Separate Complimentary Mold Parts," issued on June 19, 1990.  In addition to the '184 patent, the Trust is the owner of a number of patents issued to Jens Ole Sorensen, an inventor whose forty years in plastic injection molding have resulted in more than 65 United States patents and dozens of international patents.    Mr. Sorensen has

Mr. Fred Pond, President and CEO
Ridgid, Inc.
Unlicensed usage of the '184 patented method
September 24, 2004
page 2

developed products and processes, which have been widely used in producing cassette tapes, medical devices, automotive parts, food and beverage containers, and children's toys. Some of Mr. Sorensen's present endeavors include developing methods to enable production of hollow injection molded products with reduced wall thickness and improved dimensional control. Where applicable, the capacity to produce injection-molded products with reduced wall thickness allows for the use of less plastic in the manufacture and generally allows for faster production cycle times.

The '184 patent provides a long-sought elegant solution to a pervasive problem in the injection molding of hollow plastic products. The problem is that the highly pressurized injection of molten plastic forces the mold parts to move relative to each other. This mold movement problem causes misalignment of the mold parts and results in products with walls of undesirable thickness variations if not adequately controlled. Mr. Sorensen has invented a number of methods for mold stabilization that are applicable in different injection molding situations. For these inventions, Mr. Sorensen has been awarded several different patents recognized in the United States and other major industrial powers around the world.

The '184 patented method facilitates production of plastic components made with two or more plastic injections with different characteristics. The '184 patented technology provides an improved method for reducing mold misalignment during the injection molding process. This assists the manufacturer in producing parts with controlled dimensions fabricated within narrower tolerances. The improved dimensional control can be used to produce components with more refined fit and finish, improving the overall quality and appearance of the product. Moreover, the improved dimensional control can facilitate a reduction in material wasted and a reduction in manufacturing cycle time, both of which can be leveraged into reduced manufacturing cost.

The '184 patented method increases stabilization of the mold parts during injection molding of laminated plastic parts produced sequentially in two cavities made up of one common mold part and different complementary mold parts. The '184 patent teaches a method to stabilize the core during the second or later plastic injection by molding one or more stabilizing regions into the first plastic material component(s) that impede relative movement of the mold parts during the second or later injection. By providing this additional stabilization of the mold parts against movement during the injection process, hollow products may be produced having more controlled dimensions. Use of the '184 process offers significant benefit in the manufacture of two-plastic tool housings and similar products.

The following table lists some Ridgid products that our inspection show to be substantially likely to have been produced through the use of a process which infringes

Mr. Fred Pond, President and CEO
Ridgid, Inc.
Unlicensed usage of the '184 patented method
September 24, 2004
page 3

the '184 patent (hereinafter, "Accused Products").  This is not intended to be an exhaustive list, rather it is a set of examples that we have thus far found.  Our investigation into additional products that are infringing continues.

| ACCUSED PRODUCT | Model No. |
|---|---|
| Ridgid 18V Cordless Reciprocating Saw | R844 |
| Ridgid HD 3/8" VSR Drill | R7000 |
| Ridgid HD Reciprocating Saw | R3000 |

My client is prepared to discuss reasonable terms for a license that would allow Ridgid to continue to practice the '184 process in the manufacture of its products. Ridgid must obtain a license under the '184 patent in order to continue importing into, manufacturing, offering for sale and/or selling the Accused Products within the United States.  This requirement extends to any additional infringing Ridgid products that we have not yet identified. Ridgid has a legal duty to avoid infringement of United States patents.  Ridgid's manufacture of its tool housings outside the United States does not avoid infringement liability when those infringing products are imported into the United States.

Enclosed for your convenience are two (2) sets of D-size drawing number D-5411 prepared by my client.  We are providing these drawings as exemplars of the Accused Products that illustrate our infringement analysis. The top view (Fig. 1) of each drawing shows the Accused Product with an exemplary section line 4-4 through the product.  The sectional view shown in Fig. 4 is taken along section line 4-4 and corresponds to Fig. 2B of the '184 patent. Fig. 4 illustrates where each element of the patent claims appears in the Accused Product. A comparison of Fig. 4 and Figure 2B of the '184 patent (illustrated at the bottom-left of the drawing) demonstrates that the claimed limitations of the '184 patent are present in the Accused Products in the same manner as in a preferred embodiment of the patent.  Both figures show a cross-section of the molds with the hollow products having a closed end and an open end positioned in the mold cavity formed between a first common mold part (10) and second complementary mold part (26).  The products have laminated walls (38) that extend to the rim of the products and consist of plastics having different characteristics. Additionally, each product has a portion of the first plastic material component (20)

Mr. Fred Pond, President and CEO
Ridgid, Inc.
Unlicensed usage of the '184 patented method
September 24, 2004
page 4

which functions as a stabilizing region (30) to impede the relative movement of the mold parts during the second injection.

Ridgid's use of the '184 patented technology is further substantiated by the enclosed claim charts associated with the attached drawings.  The claim charts compare the illustrated Accused Product to claim number one (1) of the '184 patent. The first column of the claim chart quotes the text of the claim.  The second column provides commentary pointing out the corresponding structure or element of the Accused Product.  The third column is a remark reference number.  Finally, the fourth column identifies one or more reference figures from the accompanying drawing showing the particular aspect that is the subject of the remark.  The chart rows are broken down by convenience to the commentary text.  For your convenient reference, a copy of the '184 patent is enclosed.

It may be possible, although not substantially likely, that Ridgid manufactures some of the Accused Products in a manner such that production does not infringe the '184 patented process.   In order that we may quickly resolve this issue, please provide the following information:

1.    Verify whether the two mold cavities used to fabricate the external plastic tool housing of each Accused Product share a common mold part.

2.    Verify whether the portion of the tool housing identified in the attached drawings as "FIRST PLASTIC MATERIAL COMPONENT 20" is fabricated with injection into the firstly-filled mold cavity used to produce the Accused Product.

3.    Verify whether the portion of the tool housing identified in the attached drawings as "SECOND PLASTIC MATERIAL COMPONENT 32" is fabricated with injection into the secondly-filled mold cavity used to produce the Accused Product.

4.    In the alternative, provide a complete set of "as-built" mold drawings for the plastic tool housing of each Accused Product.

**PLEASE BE ADVISED THAT THE FOREGOING IS A REQUEST UNDER THE UNITED STATES PROCESS PATENT AMENDMENTS ACT OF 1988, AND MORE SPECIFICALLY WITH REFERENCE TO 35 UNITED STATES CODE § 295, SEEKING FACTUAL INFORMATION NECESSARY TO VERIFY THAT PRODUCTS MADE, SOLD, IMPORTED INTO, OR USED IN THE UNITED STATES ARE MADE BY A PROCESS PATENTED IN THE UNITED STATES.**

Mr. Fred Pond, President and CEO
Ridgid, Inc.
Unlicensed usage of the '184 patented method
September 24, 2004
page 5

The United States Process Patent Amendments Act of 1988 ("PPAA") provides at 35 U.S.C. § 295 as follows:

### Sec. 295. Presumption: Product made by patented process

In actions alleging infringement of a process patent based on the importation, sale, offer for sale, or use of a product which is made from a process patented in the United States, if the court finds—

(1) that a substantial likelihood exists that the product was made by the patented process, and

(2) that the plaintiff has made a reasonable effort to determine the process actually used in the production of the product and was unable to so determine,

the product shall be presumed to have been so made, and the burden of establishing that the product was not made by the process shall be on the party asserting that it was not so made.

If Ridgid asserts that any Accused Product is not made with two mold cavities sharing one common mold part, or that any of the statements 1 through 3, hereinabove, is not correct for any Accused Product, please immediately notify me with the correct information and documentation to substantiate Ridgid's contention. In the absence of such countervailing evidence, our analysis leads us to the conviction that Ridgid is making unauthorized use of the '184 patented technology in the manufacture of each Accused Product.

Please provide the information requested no later than October 15, 2004. This provides Ridgid with more than a reasonable amount of time to collect the required information. My client and I are prepared to hold such information in confidence, and to sign a suitable confidentiality agreement to that end.

Be advised that this constitutes a notice of patent infringement in violation of 35 U.S.C. § 271. Should Ridgid fail to diligently investigate this matter upon receipt of this notice, it will be considered a breach of Ridgid's affirmative duty to investigate allegations of patent infringement as provided in 35 U.S.C. § 287. Such breach of the duty to investigate is evidence of willful infringement of the '184 patent, which finding can support enhancement of damages awarded pursuant to 35 U.S.C. § 284.

Mr. Fred Pond, President and CEO
Ridgid, Inc.
Unlicensed usage of the '184 patented method
September 24, 2004
page 6

We recognize that Ridgid contracts out the fabrication of many components of its tools to manufacturing agents. However, Ridgid is ultimately responsible for the infringement of the '184 patent in making, importing, offering for sale or selling its tools and components. Ridgid's liability holds regardless of whether it makes these parts itself or through a third-party. Neither production of the Accused Products through manufacturing agents, nor production of the Accused Products outside of the United States excuses Ridgid's liability for infringement of the '184 patent. Title 35, section 271 of the United States Code provides that:

(a)    Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

Moreover, with regard to patented processes, section 271 provides:

(g)    Whoever without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer, if the importation, offer to sell, sale, or use of the product occurs during the term of such process patent.

My client has no interest in the policing problems that are inherent in licensing contracted parts fabricators. Ridgid is the party that offers to sell and sells these products in the United States. Therefore, Ridgid is liable as an infringer for those products which infringe United States patents, including the '184 patent.

While our infringement and licensing discussions will be with Ridgid, we will consider any evidence of non-infringement that is produced by Ridgid or its manufacturing agents. If Ridgid possesses evidence showing that any Accused Product is not actually made by an infringing process, providing that evidence to us immediately would greatly simplify matters. My client is prepared to withdraw the assertion of infringement with respect to any product for which we are provided sufficient proof demonstrating that the process actually used to make the product does not infringe the '184 patent.

In the interest of obtaining an amicable and rapid resolution of this matter, my client has authorized me to offer a fully paid-up license and release for all Ridgid's past and future use of the '184 patented technology in exchange for the sum of US$200,000.

Mr. Fred Pond, President and CEO
Ridgid, Inc.
Unlicensed usage of the '184 patented method
September 24, 2004
page 7

(Two Hundred Thousand U.S. Dollars). This offer expires by its own terms on October 15, 2004.

Your anticipated courtesy in working with us toward a rapid and amicable resolution of this matter is greatly appreciated.

Cordially,

J. Michael Kaler

Encl:  Drawing No. D-5411
       Claim Chart for Drawing No. D-5411
       U.S. Patent No. 4,935,184

# EXHIBIT B

# LOCKE LIDDELL & SAPP LLP

ATTORNEYS & COUNSELORS

3400 JPMORGAN CHASE TOWER
600 TRAVIS STREET
HOUSTON, TEXAS 77002-3095

AUSTIN • DALLAS • HOUSTON • NEW ORLEANS

(713) 226-1200
Fax: (713) 223-3717
www.lockeliddell.com

Robert J. McAughan, Jr.
Direct Number: (713) 226-1154
email: bmcaughan@lockeliddell.com

July 12, 2005

**Via e-mail: MICHAEL@KALERLAW.COM**
**and confirmation via U. S. First Class Mail**

J. Michael Kaler, Esq.
Kaler Law Offices
9930 Mesa Rim Road, Suite 200
San Diego, California 92121

RE:     *July 7, 2005 Letter to Fred Pond*

Dear Mr. Kahler:

I write to you as outside counsel for RIDGID, Inc. ("RIDGID") and in response to your
July 7, 2005 letter to Fred Pond concerning the alleged use of a process covered by
United States Patent No. 4,935,184 during the manufacture of the RIDGID® branded:
18V cordless reciprocating saw (Model No. R844), 3/8" electric drill (Model No. R7000)
and reciprocating saw (Model No. R3000).

RIDGID does not manufacture the identified products. Each of the identified products is
manufactured by One World Technologies, Inc. The RIDGID® trademark is used on the
products pursuant to a trademark license agreement. This fact is clearly reflected in the
Operator's Manuals for each of the identified products, which we assume that you have
reviewed, and which are attached. *See* OPERATOR'S MANUAL 3/8"IN. (10MM)
PROFESSIONAL ELECTRIC DRILL R7000 at 15 ("This product is manufactured by One
World Technologies, Inc., under a trademark license from Ridgid, Inc. All warranty
communications should be directed to One World Technologies, Inc. . . ."); OPERATOR'S
MANUAL 18 VOLT RECIPROCATING SAW VARIABLE SPEED R844 at 15 ("This product is
manufactured by One World Technologies, Inc. The trademark is licensed from RIDGID,
Inc. All warranty communications should be directed to One World Technologies, Inc. . .
."); and OPERATOR'S MANUAL RECIPROCATING SAW R3000 VARIABLE SPEED at 14 ("This
product is manufactured under a license from Ridgid Inc. by One World Technologies,
Inc. All warranty communications should be directed to One World Technologies, Inc. . .
.").

J. Michael Kaler, Esq.
Page 2
July 12, 2005

We suggest that you direct your correspondence to the manufacturer of the products
referenced in your letter. As reflected in the Operating Manuals for such products, the
address for One World Technologies, Inc. is Hwy. 8, Pickens, SC 29671.

Very truly yours,

Robert J. McAughan, Jr.

Attachment

# OPERATOR'S MANUAL

## Reciprocating Saw
## R3000
## Variable Speed





This new saw has been engineered and manufactured to our high standards for dependability, ease of operation, and operator safety. When properly cared for, the saw will give you years of rugged, trouble-free performance.

---

⚠ **WARNING:**

To reduce the risk of injury, the user must read and understand the operator's manual before using this product.

---

Thank you for buying a RIDGID product.

## SAVE THIS MANUAL FOR FUTURE REFERENCE

# WARRANTY

### RIDGID® HAND HELD AND STATIONARY POWER TOOL LIMITED THREE YEAR WARRANTY AND 90-DAY SATISFACTION GUARANTEE POLICY

This product is manufactured under license from Ridgid, Inc. by One World Technologies, Inc. All warranty communications should be directed to One World Technologies, Inc. at (toll-free) 1-866-539-1710.

### 90-DAY SATISFACTION GUARANTEE POLICY

During the first 90 days after the date of purchase, if you are dissatisfied with the performance of this RIDGID tool for any reason you may return the tool to the dealer from which it was purchased for a full refund or exchange. To receive a replacement tool you must present proof of purchase and return all original equipment packaged with the original product. The replacement tool will be covered by the limited warranty for the balance of the three year warranty period.

### WHAT IS COVERED UNDER THE LIMITED THREE YEAR WARRANTY

This warranty covers all defects in workmanship or materials in this RIDGID tool for the three year period from the date of purchase. This warranty is specific to this tool. Warranties for other RIDGID products may vary.

### HOW TO OBTAIN SERVICE

To obtain service for this RIDGID tool, you must return it, freight prepaid, to an authorized RIDGID service center for hand held and stationary power tools. You may obtain the location of the authorized service center nearest you by calling (toll-free) 1-866-539-1710 or by logging on to the RIDGID website at www.ridgidwoodworking.com. When requesting warranty service, you must present the proof of purchase documentation, which includes a date of purchase. The authorized service center will repair any faulty workmanship, and either repair or replace any defective part, at our option at no charge to you.

### WHAT IS NOT COVERED

This warranty applies only to the original purchaser at retail and may not be transferred. This warranty only covers defects arising under normal usage and does not cover any malfunction, failure or defect resulting from misuse, abuse, neglect, alteration, modification or repair by other than an authorized RIDGID service center for hand held and stationary power tools. One World Technologies, Inc. makes no warranties, representations or promises as to the quality or performance of its power tools other than those specifically stated in this warranty.

### ADDITIONAL LIMITATIONS

To the extent permitted by applicable law, all implied warranties, including warranties of MERCHANTABILITY or FITNESS FOR A PARTICULAR PURPOSE, are disclaimed. Any implied warranties, including warranties of merchantability or fitness for a particular purpose, that cannot be disclaimed under state law are limited to three years from the date of purchase. One World Technologies, Inc. is not responsible for direct, indirect, incidental or consequential damages. Some states do not allow limitations on how long an implied warranty lasts and/or do not allow the exclusion or limitation of incidental or consequential damages, so the above limitations may not apply to you. This warranty gives you specific legal rights, and you may also have other rights which vary from state to state.

**One World Technologies, Inc.**
Hwy. 8
Pickens, SC 29671

# OPERATOR'S MANUAL



## 3/8 in. (10 mm) PROFESSIONAL ELECTRIC DRILL

Variable Speed/Reversible
Double Insulated

**R7000**



Your new drill has been engineered and manufactured to our high standards for dependability, ease of operation, and operator safety. When properly cared for, it will give you years of rugged, trouble-free performance.

⚠ **WARNING:**
To reduce the risk of injury, the user must read and understand the operator's manual before using this product.

Thank you for buying a Ridgid product.

## SAVE THIS MANUAL FOR FUTURE REFERENCE

# WARRANTY

### RIDGID® HAND HELD AND STATIONARY POWER TOOL
### LIMITED THREE YEAR WARRANTY AND 90-DAY SATISFACTION GUARANTEE POLICY

This product is manufactured by One World Technologies, Inc., under a trademark license from Ridgid, Inc. All warranty communications should be directed to One World Technologies, Inc., attn: RIDGID handheld and stationary power tool technical service at (toll free) 1-866-539-1710.

### 90-DAY SATISFACTION GUARANTEE POLICY

During the first 90 days after the date of purchase, if you are dissatisfied with the performance of this RIDGID tool for any reason you may return the tool to the dealer from which it was purchased for a full refund or exchange. To receive a replacement tool you must present proof of purchase and return all original equipment packaged with the original product. The replacement tool will be covered by the limited warranty for the balance of the three year warranty period.

### WHAT IS COVERED UNDER THE LIMITED THREE YEAR WARRANTY

This warranty covers all defects in workmanship or materials in this RIDGID tool for the three year period from the date of purchase. This warranty is specific to this tool. Warranties for other RIDGID products may vary.

### HOW TO OBTAIN SERVICE

To obtain service for this RIDGID tool you must return it, freight prepaid, to an authorized RIDGID service center for hand held and stationary power tools. You may obtain the location of the authorized service center nearest you by calling (toll free) 1-866-539-1710 or by logging on to the RIDGID website at www.ridgid.com. When requesting warranty service, you must present the proof of purchase documentation, which includes a date of purchase. The authorized service center will repair any faulty workmanship, and either repair or replace any defective part, at our option at no charge to you.

### WHAT IS NOT COVERED

This warranty applies only to the original purchaser at retail and may not be transferred. This warranty only covers defects arising under normal usage and does not cover any malfunction, failure or defect resulting from misuse, abuse, neglect, alteration, modification or repair by other than an authorized service center for RIDGID branded hand held and stationary power tools. **RIDGID, INC. AND ONE WORLD TECHNOLOGIES, INC. MAKE NO WARRANTIES, REPRESENTATIONS OR PROMISES AS TO THE QUALITY OR PERFORMANCE OF ITS POWER TOOLS OTHER THAN THOSE SPECIFICALLY STATED IN THIS WARRANTY.**

### ADDITIONAL LIMITATIONS

To the extent permitted by applicable law, all implied warranties, including warranties of MERCHANTABILITY or FITNESS FOR A PARTICULAR PURPOSE, are disclaimed. Any implied warranties, including warranties of merchantability or fitness for a particular purpose, that cannot be disclaimed under state law are limited to three years from the date of purchase. One World Technologies, Inc. is not responsible for direct, indirect, incidental or consequential damages. Some states do not allow limitations on how long an implied warranty lasts and/or do not allow the exclusion or limitation of incidental or consequential damages, so the above limitations may not apply to you. This warranty gives you specific legal rights, and you may also have other rights which vary from state to state.

**One World Technologies, Inc.**
Hwy. 8
Pickens, SC 29671



# OPERATOR'S MANUAL

## 18 VOLT RECIPROCATING SAW VARIABLE SPEED

### R844



Your reciprocating saw has been engineered and manufactured to our high standards for dependability, ease of operation, and operator safety. When properly cared for, it will give you years of rugged, trouble-free performance.

 **WARNING:**
To reduce the risk of injury, the user must read and understand the operator's manual before using this product.

Thank you for buying a RIDGID product.

## SAVE THIS MANUAL FOR FUTURE REFERENCE

# WARRANTY

### RIDGID® HAND HELD AND STATIONARY POWER TOOL 3 YEAR LIMITED SERVICE WARRANTY

Proof of purchase must be presented when requesting warranty service.

Limited to RIDGID® hand held and stationary power tools purchased 2/1/04 and after. This product is manufactured by One World Technologies, Inc. The trademark is licensed from RIDGID, Inc. All warranty communications should be directed to One World Technologies, Inc., attn: RIDGID Hand Held and Stationary Power Tool Technical Service at (toll free) 1-866-539-1710.

### 90-DAY SATISFACTION GUARANTEE POLICY

During the first 90 days after the date of purchase, if you are dissatisfied with the performance of this RIDGID® Hand Held and Stationary Power Tool for any reason you may return the tool to the dealer from which it was purchased for a full refund or exchange. To receive a replacement tool you must present proof of purchase and return all original equipment packaged with the original product. The replacement tool will be covered by the limited warranty for the balance of the 3 YEAR service warranty period.

### WHAT IS COVERED UNDER THE 3 YEAR LIMITED SERVICE WARRANTY

This warranty on RIDGID® Hand Held and Stationary Power Tools covers all defects in workmanship or materials and normal wear items such as brushes, chucks, motors, switches, cords, gears and even cordless batteries in this RIDGID® tool for three years following the purchase date of the tool. Warranties for other RIDGID® products may vary.

### HOW TO OBTAIN SERVICE

To obtain service for this RIDGID® tool you must return it; freight prepaid, or take it in to an authorized service center for RIDGID® branded hand held and stationary power tools. You may obtain the location of the authorized service center nearest you by calling (toll free) 1-866-539-1710 or by logging on to the RIDGID® website at www.ridgid.com. When requesting warranty service, you must present the original dated sales receipt. The authorized service center will repair any faulty workmanship, and either repair or replace any part covered under the warranty, at our option, at no charge to you.

### WHAT IS NOT COVERED

This warranty applies only to the original purchaser at retail and may not be transferred. This warranty only covers defects arising under normal usage and does not cover any malfunction, failure or defect resulting from misuse, abuse, neglect, alteration, modification or repair by other than an authorized service center for RIDGID® branded hand held and stationary power tools. Consumable accessories provided with the tool such as, but not limited to, blades, bits and sand paper are not covered.

**RIDGID, INC. AND ONE WORLD TECHNOLOGIES, INC. MAKE NO WARRANTIES, REPRESENTATIONS OR PROMISES AS TO THE QUALITY OR PERFORMANCE OF ITS POWER TOOLS OTHER THAN THOSE SPECIFICALLY STATED IN THIS WARRANTY.**

### ADDITIONAL LIMITATIONS

To the extent permitted by applicable law, all implied warranties, including warranties of MERCHANTABILITY or FITNESS FOR A PARTICULAR PURPOSE, are disclaimed. Any implied warranties, including warranties of merchantability or fitness for a particular purpose, that cannot be disclaimed under state law are limited to three years from the date of purchase. One World Technologies, Inc. and RIDGID, Inc. are not responsible for direct, indirect, incidental or consequential damages. Some states do not allow limitations on how long an implied warranty lasts and/or do not allow the exclusion or limitation of incidental or consequential damages, so the above limitations may not apply to you. This warranty gives you specific legal rights, and you may also have other rights which vary from state to state.

---

**One World Technologies, Inc.**
Hwy. 8
Pickens, SC 29671

**EXHIBIT C**

# KALER LAW OFFICES

9930 MESA RIM ROAD
SUITE 200
SAN DIEGO, CALIFORNIA 92121
TELEPHONE: (858) 362-3151
FAX: (858) 824-9073

Intellectual Property

· Management
· Licensing
· Litigation

J. Michael Kaler

michael@kalerlaw.com

August 11, 2005

## Via FEDEX

Mr. Jeff Dills
President
One World Technologies, Inc.
1428 Pearman Dairy Road
Anderson, SC 29625
Phone: 864-226-6511

## CONFIDENTIAL OFFER OF COMPROMISE SUBJECT TO FEDERAL
## RULES OF EVIDENCE § 408

RE:   One World Technologies, Inc.'s ("One World") unauthorized usage of the
technology taught in United States Patent No. 4,935,184 ("the '184 patent")

Dear Mr. Dills:

We have examined several One World products sold under the Ridgid brand
name that incorporate plastic housings manufactured with plastics with different
characteristics. From our examination, we have determined that the plastic housings of
some of these products are substantially likely to be fabricated utilizing a process that
infringes United States Patent No. 4,935,184 ("the '184 patent"), and we are continuing
our investigations into other One World products. Further, our records indicate that One
World is not currently licensed to utilize the '184 patented method.

I represent the Sorensen Research & Development Trust ("Trust"), the owner of
the '184 patent entitled "Stabilized Injection Molding When Using a Common Mold Part
With Separate Complimentary Mold Parts," issued on June 19, 1990. In addition to the
'184 patent, the Trust is the owner of a number of patents issued to Jens Ole Sorensen,
an inventor whose forty years in plastic injection molding have resulted in more than 65
United States patents and dozens of international patents.   Mr. Sorensen has
developed products and processes, which have been widely used in producing cassette
tapes, medical devices, automotive parts, food and beverage containers, and children's

Mr. Jeff Dills
President
One World Technologies, Inc.
Unlicensed usage of the '184 patented method
August 11, 2005
page 2


toys. Some of Mr. Sorensen's present endeavors include developing methods to enable production of hollow injection molded products with reduced wall thickness and improved dimensional control. Where applicable, the capacity to produce injection-molded products with reduced wall thickness allows for the use of less plastic in the manufacture and generally allows for faster production cycle times.

The '184 patent provides a long-sought elegant solution to a pervasive problem in the injection molding of hollow plastic products. The problem is that the highly pressurized injection of molten plastic forces the mold parts to move relative to each other. This mold movement problem causes misalignment of the mold parts and results in products with walls of undesirable thickness variations if not adequately controlled. Mr. Sorensen has invented a number of methods for mold stabilization that are applicable in different injection molding situations. For these inventions, Mr. Sorensen has been awarded several different patents recognized in the United States and other major industrial powers around the world.

The '184 patented method facilitates production of plastic components made with two or more plastic injections with different characteristics. The '184 patented technology provides an improved method for reducing mold misalignment during the injection molding process. This assists the manufacturer in producing parts with controlled dimensions fabricated within narrower tolerances. The improved dimensional control can be used to produce components with more refined fit and finish, improving the overall quality and appearance of the product. Moreover, the improved dimensional control can facilitate a reduction in material wasted and a reduction in manufacturing cycle time, both of which can be leveraged into reduced manufacturing cost.

The '184 patented method increases stabilization of the mold parts during injection molding of laminated plastic parts produced sequentially in two cavities made up of one common mold part and different complementary mold parts. The '184 patent teaches a method to stabilize the core during the second or later plastic injection by molding one or more stabilizing regions into the first plastic material component(s) that impede relative movement of the mold parts during the second or later injection. By providing this additional stabilization of the mold parts against movement during the injection process, hollow products may be produced having more controlled dimensions. Use of the '184 process offers significant benefit in the manufacture of two-plastic plastic housings and similar products.

The following table lists One World products that our inspection show to be substantially likely to have been produced through the use of a process which infringes

Mr. Jeff Dills
President
One World Technologies, Inc.
Unlicensed usage of the '184 patented method
August 11, 2005
page 3

the '184 patent (hereinafter, "Accused Products"). This list is not intended to be exhaustive, rather it indicates Accused Products that we have discovered and examined. Our investigation into additional Accused Products continues:

| ACCUSED PRODUCT | Model No. |
|---|---|
| Ridgid 18V Cordless Reciprocating Saw | R844 |
| Ridgid HD 3/8" VSR Drill | R7000 |
| Ridgid HD Reciprocating Saw | R3000 |

My client is prepared to discuss reasonable terms for a license that would allow One World to continue to practice the '184 process in the manufacture of its products. One World must obtain a license under the '184 patent in order to continue importing into, manufacturing, offering for sale and/or selling the Accused Products within the United States. This requirement extends to any additional infringing One World products that we have not yet identified. One World has a legal duty to avoid infringement of United States patents. One World's manufacture of its plastic housings outside the United States does not avoid infringement liability when those infringing products are imported into the United States.

I have enclosed for your convenience, two (2) sets of D-size drawing number D-5411 prepared by my client. We are providing these drawings as exemplars of the Accused Products that illustrate our infringement analysis. The top view (Fig. 1) of each drawing shows the Accused Product with a exemplary section lines 4-4 and 5-5 through the product. The sectional views shown in Figs. 4 and 5 are taken along section lines 4-4 and 5-5, respectively and correspond to Fig. 2B of the '184 patent. Fig. 4 illustrates where each element of the patent claims appears in the Accused Product. A comparison of Fig. 4 and Figure 2B of the '184 patent (illustrated at the bottom-left of the drawing) demonstrates that the claimed limitations of the '184 patent are present in the Accused Products in the same manner as in a preferred embodiment of the patent. Both figures show a cross-section of the molds with the hollow products having a closed end and an open end positioned in the mold cavity formed between a first common mold part (10) and second complementary mold part (26). The products have laminated walls (38) that extend to the rim of the products and consist of plastics having different characteristics. Additionally, each product has a portion of the first plastic

Mr. Jeff Dills
President
One World Technologies, Inc.
Unlicensed usage of the '184 patented method
August 11, 2005
page 4

material component (20) which functions as a stabilizing region (30) to impede the relative movement of the mold parts during the second injection.

One World's use of the '184 patented technology is further substantiated by the enclosed claim charts associated with the attached drawings. The claim charts compare the illustrated Accused Product to claim number one (1) of the '184 patent. The first column of the claim chart quotes the text of the claim. The second column provides commentary pointing out the corresponding structure or element of the Accused Product. The third column is a remark reference number. Finally, the fourth column identifies one or more reference figures from the accompanying drawing showing the particular aspect that is the subject of the remark. The chart rows are broken down by convenience to the commentary text. For your convenient reference, a copy of the '184 patent is enclosed.

It may be possible, although not substantially likely, that One World manufactures some of the Accused Products in a manner such that production does not infringe the '184 patented process. In order that we may quickly resolve this issue, please provide answers to the following questions:

With regard to each and every Accused Product manufactured, sold or offered for sale within the past six years:

1.    Was each plastic component of each housing molded in a different and distinct injection-molding machine?

2.    Was the first molded plastic component manually moved between the different molding machines by hand?

3.    Were no two plastic components of the plastic housing fabricated with any shared mold part?

**PLEASE BE ADVISED THAT THE FOREGOING IS A REQUEST UNDER THE UNITED STATES PROCESS PATENT AMENDMENTS ACT OF 1988, AND MORE SPECIFICALLY WITH REFERENCE TO 35 UNITED STATES CODE § 295, SEEKING FACTUAL INFORMATION NECESSARY TO VERIFY THAT PRODUCTS MADE, SOLD, IMPORTED INTO, OR USED IN THE UNITED STATES ARE MADE BY A PROCESS PATENTED IN THE UNITED STATES.**

Mr. Jeff Dills
President
One World Technologies, Inc.
Unlicensed usage of the '184 patented method
August 11, 2005
page 5

The United States Process Patent Amendments Act of 1988 ("PPAA") provides at 35 U.S.C. § 295 as follows:

### Sec. 295. Presumption: Product made by patented process

In actions alleging infringement of a process patent based on the importation, sale, offer for sale, or use of a product which is made from a process patented in the United States, if the court finds—

(1) that a substantial likelihood exists that the product was made by the patented process, and

(2) that the plaintiff has made a reasonable effort to determine the process actually used in the production of the product and was unable to so determine,

the product shall be presumed to have been so made, and the burden of establishing that the product was not made by the process shall be on the party asserting that it was not so made.

If One World asserts that any Accused Product is not made with two mold cavities sharing one common mold part, or that any of the statements 1 through 3, hereinabove, is not correct for any Accused Product, please immediately notify me with the correct information and documentation to substantiate One World's contention. In the absence of such countervailing evidence, our analysis leads us to the conviction that One World is making unauthorized use of the '184 patented technology in the manufacture of each Accused Product.

Please provide the information requested within thirty (30) days of the date of this letter. This provides One World with more than a reasonable amount of time to collect the required information. My client and I are prepared to hold such information in confidence, and to sign a suitable confidentiality agreement to that end.

Be advised that this constitutes a notice of patent infringement in violation of 35 U.S.C. § 271. Should One World fail to diligently investigate this matter upon receipt of this notice, it will be considered a breach of One World's affirmative duty to investigate allegations of patent infringement as provided in 35 U.S.C. § 287. Such breach of the duty to investigate is evidence of willful infringement of the '184 patent, which finding can support enhancement of damages awarded pursuant to 35 U.S.C. § 284.

Mr. Jeff Dills
President
One World Technologies, Inc.
Unlicensed usage of the '184 patented method
August 11, 2005
page 6


We recognize that One World contracts out the fabrication of many components of its tools to manufacturing agents. However, One World is ultimately responsible for the infringement of the '184 patent in making, importing, offering for sale or selling its tools and components. One World's liability holds regardless of whether it makes these parts itself or through a third-party. Neither production of the Accused Products through manufacturing agents, nor production of the Accused Products outside of the United States excuses One World's liability for infringement of the '184 patent. Title 35, section 271 of the United States Code provides that:

(a)    Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

Moreover, with regard to patented processes, section 271 provides:

(g)    Whoever without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer, if the importation, offer to sell, sale, or use of the product occurs during the term of such process patent.

My client has no interest in the policing problems that are inherent in licensing contracted parts fabricators. One World is the party that offers to sell and sells these products in the United States. Therefore, One World is liable as an infringer for those products which infringe United States patents, including the '184 patent.

While our infringement and licensing discussions will be with One World, we will consider any evidence of non-infringement that is produced by One World or its manufacturing agents. If One World possesses evidence showing that any Accused Product is not actually made by an infringing process, providing that evidence to us immediately would greatly simplify matters. My client is prepared to withdraw the assertion of infringement with respect to any product for which we are provided sufficient proof demonstrating that the process actually used to make the product does not infringe the '184 patent.

Mr. Jeff Dills
President
One World Technologies, Inc.
Unlicensed usage of the '184 patented method
August 11, 2005
page 7


There are a number of large, multi-national corporations that have licensed their usage of the '184 patented technology. To protect my clients' intellectual property rights, we cannot allow One World's unlicensed usage to continue. There is a narrow window of opportunity at this early stage wherein the parties can resolve this matter without incurring high costs and legal fees through amicable discussions leading to a license agreement. I encourage One World to take advantage of this opportunity by conducting its investigation into the Accused Process and then entering into licensing discussions no later than September 29, 2005.

Your anticipated courtesy in working with us toward a rapid and amicable resolution of this matter is greatly appreciated.

Cordially,

J. Michael Kaler

Encl:  Drawing No. D-5411
       Claim Chart for Drawing No. D-5411
       U.S. Patent No. 4,935,184

# KALER LAW OFFICES

9930 MESA RIM ROAD
SUITE 200
SAN DIEGO, CALIFORNIA 92121
TELEPHONE: (858) 362-3151
FAX: (858) 824-9073

J. Michael Kaler

michael@kalerlaw.com

Intellectual Property Litigation

August 10, 2005

**Fax No.  713-223-3717**

Robert J. McAughan, Jr., Esq.
Locke Liddell & Sapp LLP
3400 JPMorgan Chase Tower
600 Travis Street
Houston, TX  77002-3095
Phone No.:  713-226-1154

## CONFIDENTIAL OFFER OF COMPROMISE SUBJECT TO FEDERAL RULES OF EVIDENCE § 408

RE:   Ridgid, Inc.'s ("Ridgid") unauthorized usage of the technology taught in United States Patent No. 4,935,184

Dear Mr. McAughan:

Thank you for your letter of July 12, 2005, advising me that the RIDGID brand products that we have identified as substantially likely to be manufactured utilizing a process that infringes the '184 patent are manufactured by One World Technologies, Inc. and sold under the RIDGID brand name pursuant to a trademark licensing agreement.  I will address further communication regarding the Accused Products to One World.

Your courtesy in this matter has been greatly appreciated.

Cordially,

J. Michael Kaler