# EXHIBIT G



IN THE COURT OF COMMON PLEAS
OF PHILADELPHIA COUNTY, PENNSYLVANIA

JAMES MARKHORST :
Plaintiff :
vs. :
RIDGID, INC., : FEBRUARY TERM, 2006
Defendant : NO. 2539

- - -

December 13, 2006

- - -

Telephonic deposition of ROBERT BUGOS, taken pursuant to notice, at the law offices of Sacchetta & Baldino, 308 East Second Street, Media, Pennsylvania, on the above date, beginning at 3:05 p.m., before Margaret Robinson, Court Reporter and Notary Public.

- - -

BLUE ROCK REPORTING, INC.
370 Blue Rock Road
West Chester, PA 19382
(610) 761-5150

APPEARANCES:

BRUCE MacKNIGHT, ESQ.
SACCHETTA & BALDINO
308 East Second Street
Media, Pennsylvania 19063
Counsel for Plaintiff

MARGARET WENKE, ESQ.
CONNOR, WEBER & OBERLIES
171 West Lancaster Avenue
Suite 100
Paoli, Pennsylvania 19301
Counsel for Defendant

ALSO PRESENT:

Mark Rowe, Esq.

\- - -

# I N D E X

| WITNESS | PAGE |
| --- | --- |
| ROBERT BUGOS | |
| By Mr. MacKnight | 4 |

- - -

# E X H I B I T S

| NO. | DESCRIPTION | PAGE |
| --- | --- | --- |

(No Exhibits Were Marked)

- - -

(It was stipulated by and between counsel that signing, sealing, certification and filing be waived; and that all objections, except as to the form of the question, be reserved until the time of trial.)

- - -

THE WITNESS: Let me just at the outset, note that I am general counsel for the corporation pertaining to the deposition for the limited purpose of identifying ownership relationships between corporate entities, not a general submission or a waiver of the attorney client privilege or attorney client privilege for any other purpose. If you agree to that.

MR. MacKNIGHT: That's fine. If I ask you anything out of line, I'm sure you'll let me know or Peggy will let me know.

MS. WENKE: Bob, your voice was trailing a little bit, so you might want to stay near the phone.

THE WITNESS: I will hug the phone. Mark Rowe just walked into the room. I just want to let it be known that he is present.

MR. MacKNIGHT: Okay.

THE WITNESS: He's an attorney.

\- - -

ROBERT BUGOS, duly sworn according to the law, was examined and testified as follows:

\- - -

BY MR. MacKNIGHT:

Q. Sir, before we started today, I indicated I would forego all the particularities with regard to how we conduct a deposition, because it's my understanding that you are an attorney, so I will just begin with my questioning if that's okay with you.

A. That's fine.

Q. Sir, can you just give me your full name please?

A. My name is Robert A. Bugos, B as in boy, U-G-O-S.

Q. Mr. Bugos, who do you represent?

A. I'm sorry, I don't know how to answer that.

Q. Who do you work for?

A. Okay, I am general counsel for Techtronic Industries North America, Inc. and its various

subsidiaries.

Q. And how many subsidiaries are there?

A. There are a number of subsidiaries, including One World Technologies, Inc.

Q. And how long have you worked for that employer?

A. I have worked for this employer since its inception, sometime between 2000 and 2002. I have been an employee of the organization that operates the same businesses as that corporate entity, since those businesses were created in June of 2000 -- June of 2000.

Q. Okay. One of the subsidiaries is One World Technologies. What is the relationship between One World Technologies and Ridgid, Inc., if you know?

A. There is no relationship.

Q. Do you know if One World Technologies --

A. Wait a minute, I'm sorry, there may be a -- there may be a contractual relationship regarding the servicing of products, but I don't believe that that contractual relationship is with Ridgid.

Q. Does One World Technologies manufacture

any products under the Ridgid name?

A. No.

Q. Give me one second.

A. Would you like me to tell you what One World Technologies, Inc. does in connection --

Q. I was getting to that. Can you just tell me what you just asked me to ask you, what they do with regard to the products?

A. One World Technologies, Inc., is a wholly owned subsidiary of Techtronic Industries North America, Inc.

One World Technologies, Inc., also acts as a supplier of Ridgid brand products to Home Depot, which I understand owns a license for the use of the Ridgid trademark.

Q. Okay, so another entity manufactures the tools?

A. Ridgid brand products are marketed by One World Technologies to the Home Depot, are sourced through a parent company, ultimate parent company, Techtronic Industries Company Limited.

Q. Does One World Technology design the tools?

A. One World Technologies, Inc., I imagine has had design input in connection with the line of various Ridgid brand products.

Q. Can you tell me how a Ridgid tool is made?

A. A Ridgid tool is made by a manufacturer, which -- I'm sorry, I don't know how to answer that question.

Q. Sir, are you familiar with the tool that's in question in this case, the twelve inch compound miter saw with exact line?

A. I am familiar with the Ridgid line of power tools and I have seen the tool that's mentioned in this case. I have familiarity with the particulars of the design.

Q. Was that tool distributed by One World Technologies?

A. It is.

Q. With regard to registered agent for service, is there a registered agent in South Carolina for One World Technologies?

A. Yes.

Q. Are you aware if there's a registered agent in South Carolina for Ridgid?

A. No, I am not aware.

Q. And where is that registered agent located with regard to One World Technologies?

A. Sitting at my desk.

Q. You're sitting at your desk.

A. I'm the registered agent for One World Technologies, Inc., in the state of South Carolina.

Q. Can you tell me sir, do you know somebody with the last name, it looks like Brock, B-R-O-C-K?

A. I do know somebody with the last name Brock, B-R-O-C-K.

Q. With the first initial C?

A. No.

Q. Excuse me?

A. No.

Q. I have a copy of a return receipt for some registered mail that was mailed to 1428 Pearman Dairy Road, Anderson, South Carolina, 29625.

A. Yes.

Q. Is that your address?

A. It is my address, it's our office

address, yes.

Q. And it's addressed to Ridgid, Inc., and it was signed for by somebody with the last name of Brock, on March 3, 2006.

A. Okay.

Q. Would that -- and I want to represent to you sir, that that was the Complaint in this matter. Would that come across your desk?

A. I'm not aware that it has.

Q. Are you permitted to sign and accept Complaints served at that office, addressed to Ridgid?

A. I personally do not have authority to accept documents on behalf of Ridgid, Inc.

Q. And sir, from your memory or from your records, do you have any indication that you received this Complaint against Ridgid, back in March of 2006?

A. I do not.

Q. If you had received it, would you have forwarded it to Ridgid?

A. Um, I would anticipate that our department may have. I don't know. Don't know what would have happened. As I said, I don't

have a recollection of it happening.

Q. So you don't know sir, what steps were taken if that Complaint was served there?

A. I don't know what steps were taken in connection with that document. I don't have a recollection.

Q. Sir, do you know -- are you familiar with the manual for the tool that's in question here?

A. I am familiar with the manuals in general, that are used on Ridgid brand products that are manufactured through One World Technologies, Inc.

Q. And would you confirm or would you agree with the statement that nowhere on that tool, is it indicated that it is distributed by One World Technologies?

A. I can't confirm or deny that statement. I would refer you to the owner's manual itself.

Q. Sir, the warranties with regard to this product, does Ridgid provide the warranty or does One World Technology provide the warranty?

A. One World Technologies, Inc., provides any warranty on products that it services, to include this one.

Q. Can you tell me sir, have you ever received anything by way of a Complaint, at your address there, addressed to Ridgid?

A. I have no recollection of receiving mail addressed to Ridgid.

Q. Ever?

A. None.

MS. WENKE: I'd like to make a statement for the record. A few moments ago there was a reference that the service was of a Complaint. That document was a Writ, not a Complaint.

MR. MacKNIGHT: I apologize for the mistake.

BY MR. MacKNIGHT:

Q. Sir, you spoke about the owner's manual. In the owner's manual, it mentions One World Technology and gives a toll free number. Is that your understanding?

A. I would be surprised if it didn't.

Q. Do you know if you call that number, whether they represent themselves as One World Technologies or Ridgid?

A. I believe if you call that number, you

would get our service department, which is at the other end of this building. I don't know -- I would -- I have no reason to believe they would represent themselves as Ridgid.

Q. Have you ever had the opportunity to call that number and ask that question?

A. I have not.

Q. And you have no knowledge about whether Ridgid has a registered agent in South Carolina?

A. I have no reason to believe they do. I have no knowledge that they have a presence in South Carolina.

Q. Just give me one second, I'm just looking at something. Sir, I'm going to -- I have an e-mail here and unfortunately you don't have it, but it's an e-mail from Ms. Wenke, indicating we had asked about some information identifying the product -- I'm sorry, Lisa Cauley, who works with Ms. Wenke, and we had inquired about some of the information about this product and we received back information that it was designed and distributed by One World Technologies and they gave us your address which I mentioned earlier, and sold through Home Depot and the

date of manufacture and the year.

Do you know how she would have obtained that information? Would it have been through you or through Ridgid?

A. She would have obtained that information through Mark Rowe of our legal department and she would have obtained it through us, because we would be the people familiar with the product, the serial numbers and the coding system and Ridgid, Inc. would not.

Q. Do you know if it was relayed to -- this e-mail is dated Monday August 7, 2006. Do you know if it was relayed to your office, as to why this information was being requested?

A. I do not.

Q. Sir, if the certified mail that was sent to you was the Writ, was not returned to our office, is it reasonable to believe that you either retained it or forwarded it on to Ridgid?

A. I have no information as to that.

Q. Do you know why they came to you instead of going to Ridgid, to find out where the product was manufactured and distributed from?

A. It was our product.

Q. What's the general relationship between Ridgid and One World Technologies?

A. Between who?

Q. Between One World Technologies and Ridgid.

A. By Ridgid, are you referring to Ridgid, Inc.?

Q. Well whatever you understand it to be.

A. Ridgid is a trademark.

Q. Okay, and how are you permitted to use that trademark?

A. We manufacture Ridgid brand products as a supplier to Home Depot. There's a trademark license from the owner of the trademark, which I presume to be, as you've been calling them, Ridgid, Inc., so I believe that's the trademark owner. I understand it to be some entity owned by or controlled by Emerson.

Q. Emerson. That was my next question. What's the relationship between Emerson and One World Technologies?

A. I believe we service, we provide customer service under contract for certain products that were manufactured by Emerson.

Q. And would it be accurate to say that Emerson and One World Technologies entered into a partnership back in 2003?

A. That would be absolutely incorrect.

Q. Well what's the relationship between Emerson and One World Technologies?

A. One World Technologies entered into a contract with Emerson. We provide customer service in connection with certain products that were manufactured and sold by Emerson.

Q. Sir, I have a document here that I printed from the internet, from the Emerson website, regarding Emerson professional tools and One World Technologies.

The title of it is, Emerson Professional Tools and One World Technologies to partner on Ridgid power tool line.

A. I'm sorry, what does that say?

Q. It says: Emerson professional tools and One World Technologies to partner on Ridgid power tool line.

And it's from the Emerson website. And basically there's a Pat Sly quoted as the Emerson executive vice-president and the Emerson

professional tool business leader, who states: This new partnership and business model will further enhance an innovative line of power tools that already has the respect of end users everywhere.

A. Okay.

Q. In your mind, is partnership the wrong word for it, or is this article inaccurate?

A. Unfortunately I am not the person who chose that word. I'm not the person who chose that document.

I have not seen that document; however, I take it that you're trying to impose a legal definition of an entity in the word choice of marketing people, which I know to be totally inconsistent with reality.

Q. And you indicated that you don't manufacture any of the tools, you just distribute them; is that right?

A. That's correct.

Q. Okay, so it would also be inaccurate for this article, when they go on to state -- and this is from a Bob Freitag, executive vice-president of One World Technologies. Do

you know who he is?

A. I know who he is.

Q. There's a quote in here from him that says: This is quite an honor for One World Technologies to manufacture these bench top and stationary tools.

A. We source the tools, so in his mind, we manufacture them, but in order for me to give you an accurate statement, you've asked me if --

Q. Who manufactures the tools?

A. Well a variety of people manufacture the products. They are sourced through our parent company and it might be manufactured by them or it might be manufactured by a third party that they contract.

Q. Okay, so let me try to understand this. You source the tools, which means? What does source mean in your mind?

A. Well Home Depot buys them from us, we buy them from somebody else. The third party we buy them from is our parent company in Hong Kong.

Our parent company in Hong Kong may be the manufacturer, or it may be somebody else.

In the mind of somebody who's marketing the tools, we manufacture the product, but to be accurate for purposes of the deposition, I answered you as no, because --

Q. I'm sorry, you trailed off there.

A. The corporate entity, One World Technologies, Inc., technically does not manufacture anything.

Q. So is it Techtronic that manufactures them?

A. It may be, or they may source it from a third party.

Q. A third party not related to Techtronic, or another subsidiary?

A. It could be either.

Q. So your main role with regard to these Ridgid tools that are manufactured by the parent company or another subsidiary, is placing the product in the stream of commerce over here in America?

A. Well I don't want to mislead you. Our corporate entity, One World Technologies, Inc., plays a major role in the development of the product and decisions in regards to what that

product will be like.

We may have engineering input into the design of the product, in some cases we may not.

Q. Sir, could I ask you when you first became aware of this claim by Mr. Markhorst?

A. I have no recollection regarding this claim prior to this week; however, I have become aware of many claims and I may have at some time known it prior to.

Q. I'm sorry, prior to today?

A. Prior to this week.

Q. Sir, do you know if One World Technologies has ever been involved in any type of lawsuit in Pennsylvania?

A. Yes, I do.

Q. And when that occurred, who would represent One World Technologies in Pennsylvania?

A. It varies. We've had probably a dozen firms over the course of the years that have represented One World Technologies, Inc.

Q. I have to ask the question. Has Ms. Wenke's firm ever represented your company?

A. I believe she has.

Q. Pardon me?

A. I believe she has, yes.

MS. WENKE: I don't believe I've ever represented One World Technologies, per se.

THE WITNESS: That's possible.

BY MR. MacKNIGHT:

Q. You thought you did, but Ms. Wenke doesn't believe that's true.

A. We're talking about One World Technologies?

Q. Yes.

A. I don't know. I don't know specifically.

Q. Okay. Let me ask you this, do the interests of One World Technologies, are they the same as the interests of Ridgid, with regard to sales of the tools and manufacture of the tools?

A. You're asking me to draw a legal conclusion in connection with something that I'm not quite sure the scope of that and I don't think that it's appropriate for me to answer that question.

MS. WENKE: I would object to

that.

MR. MacKNIGHT: Okay.

BY MR. MacKNIGHT:

Q. Who sourced the tool, the Markhorst tool that's involved in this case?

A. To the best of my knowledge, the tool that you've described to me as being a Ridgid brand miter saw with an exact line feature, would have been a product that would be sourced by One World Technologies, Inc.

Q. And what does that mean when you say sourced?

A. They sold it to Home Depot.

Q. They sold it to Home Depot. And do you have any knowledge who manufactured it?

A. I do not know specifically; however, as I mentioned before, the Ridgid brand power tools that are marketed by One World Technologies, Inc. to Home Depot, are sourced by -- from One World Technology, Inc.'s ultimate parent in Hong Kong, which is Techtronic Industries Company Limited.

Q. Okay. I think that's all I have for you, sir. Thank you for participating today.

MS. WENKE: Thank you.

THE WITNESS: Do you have any questions?

MS. WENKE: No, I have none.

\- - -

(Deposition concluded at 3:30 p.m.)

\- - -

STATE OF PENNSYLVANIA )
) SS
COUNTY OF CHESTER )

I, Margaret Robinson, Shorthand Reporter and Notary Public duly and qualified in and for the State of Pennsylvania, do hereby certify there came before me the deponent herein, namely ROBERT BUGOS, who was by me duly sworn to testify to the truth and nothing but the truth concerning the matters in this cause.

I further certify that the foregoing transcript is a true and correct transcript of my original stenographic notes.

I further certify that I am neither attorney or counsel for, nor related to or employed by any of the parties to the action in which this deposition is taken; and furthermore, that I am not a relative or employee of any attorney or counsel employed by the parties hereto or financially interested in the action.

Margaret Robinson
Margaret Robinson
Notary Public