J. MICHAEL KALER, SBN 158296
9930 Mesa Rim Road, Suite 200
San Diego, California 92121
Telephone (858) 362-3151
michael@kalerlaw.com

MELODY A. KRAMER, SBN 169984
9930 Mesa Rim Road, Suite 1600
San Diego, California 92121
Telephone (858) 362-3150
mak@kramerlawip.com

Attorneys for Plaintiff JENS ERIK SORENSEN,
as Trustee of SORENSEN RESEARCH AND
DEVELOPMENT TRUST

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST,<br><br>    Plaintiff<br>v.<br><br>EMERSON ELECTRIC CO., a Missouri corporation; ONE WORLD TECHNOLOGIES INC., a Delaware corporation; RIDGE TOOL COMPANY, an Ohio corporation; RIGID INC., a Delaware corporation; and DOES 1 – 100,<br><br>    Defendants.<br><br>and related counterclaims.. | Case No. 08 CV 00060 JW<br><br>**DECLARATION OF EDWARD TRUITT IN SUPPORT OF PLAINTIFF'S MOTION FOR APPLICATION OF 35 U.S.C. § 295 PRESUMPTION OF INFRINGEMENT**<br><br>Date:<br>Time:<br>Courtroom 15, Fifth Floor<br>Judge: Hon. Barry Ted Moskowitz<br><br>*NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT*<br><br>*Oral Argument is Respectfully Requested at Hearing on This Matter* |

I, EDWARD TRUITT, declare:

1. I am not a party to the present action. I am over the age of eighteen. I have personal knowledge of the facts contained within the following paragraphs, and could and would competently testify thereto if called as a witness in a court of law.

2. At all times relevant herein I have been an attorney conducting research on a contractual basis for counsel to Sorensen Research and Development Trust ("SRDT"), Plaintiff in the above-captioned matter.

3. This declaration is made in support of Plaintiff's Motion for Application of 35 U.S.C. § 295 Presumption of Infringement.

4. I recently conducted extensive research on the factual and legal aspects of conducting discovery of Chinese nationals and Chinese companies in U.S. courts. My research revealed the following:

5. Two agreements govern the ability of the U.S. courts to compel discovery including depositions in China. Neither agreement provides an avenue for reasonable discovery in this matter.

6. Article 27(1) of the U.S.-China Consular Convention of 1980 allows consular officers of either nation to take and witness statements and testimony for use in connection with a legal proceeding of either nation; 33 U.S.T. 3048. China clarified this Convention in a series of diplomatic notes from the Chinese Ministry of Foreign Affairs to the U.S. Embassy in Beijing. The Chinese government stated that depositions under oath may only be taken by a U.S. Consular official or foreign attorney if, and only if, Beijing first gives express permission after receiving a letter rogatory through the Bureau of International Judicial Assistance of the Ministry of Justice of the People's Republic of China. (Diplomatic Note No. 106 dated 6 November 1981, Diplomatic Note No. 88 dated 11 September, and Diplomatic Note No. 77 dated 11 September 1996).

7. On only one occasion has the Chinese government ever granted

1  permission for a limited deposition. *United States v. Leung Pak Lun, et al* CR 88
2  0214-WHO. In connection with this one deposition, China informed the U.S.
3  government that the grant of permission should not be construed as precedent.

4      8.    The second agreement governing discovery in China is The Hague
5  Conference on Private International Law Convention on the Taking of Evidence
6  Abroad in Civil or Commercial Matters. Upon China's accession to The Hague
7  Evidence Convention, China declared that the provisions of Chapter II of the
8  Convention except for Article 15 will not be applicable; China means that diplomatic
9  and consular officers may take evidence without compulsion of nationals of the
10 United States, only with express permission given upon application to the Chinese
11 government. *See* Dept of State, *China Judicial Assistance*, available at
12 http://travel.state.gov/law/info/judicial/judicial_694.html. No depositions have ever
13 been allowed under this Convention. Further, it is not possible for any U.S. Court to
14 compel production of evidence thereby. *Id.* Attached as Exhibit A.

15     9.    The Chinese strictly guard the laws on administering and swearing of
16 oaths. This makes voluntary depositions between private parties both very difficult
17 and a criminal act. When foreign attorneys or consular officials administer an
18 unauthorized oath in China, the penalties include arrest, detention, expulsion, or
19 deportation of all participants in the oath. (http://travel.state.gov/law/info/
20 judicial/judicial_694.html). Attached as Exhibit B.

21     10.    In *Popular Imports, Inc. v. Wong's Intern., Inc.*, 166 F.R.D. 276
22 (E.D.N.Y. 1996) the court upheld the admissibility of depositions taken in China,
23 without the use of letters rogatory. However, this was only because the issue of
24 legality had not been raised prior to the depositions and was deemed waived:

> Had plaintiff raised this issue prior to the taking of the depositions, and had the Court concluded that the procedures proposed would in fact have violated Chinese law, the Court would of course have been loathe to authorize procedures that would have put counsel at risk and might well have generated diplomatic friction.

3.

Case No. 08 cv 00095 JW

*Id. at* 279.

11. U.S. judgments cannot and will not be enforced in China. Chinese law requires the existence of a treaty or de facto reciprocity in order to enforce a foreign judgment. Neither of this exists between the United States and China.

12. Research reveals specific cases in which enforcement was refused and no cases in which enforcement was granted. *See* Clarke, Donald C., "The Enforcement of United States Court Judgments in China: A Research Note" (May 27, 2004). GWU Legal Studies Research Paper No. 236 Available at SSRN: http://ssrn.com/abstract=943922.

I declare under penalty of perjury under the laws of the United States of America that the foregoing paragraphs are true and correct to the best of my own personal knowledge.

DATED this Tuesday, April 22, 2008.

/s/ Edward Truitt
Edward Truitt, Esq.

# EXHIBIT A

- Law, Regulations & Public Policy
- Information for Americans Abroad
- Consular Notification and Access
- Citizenship and Nationality
- Legal and Public Policy Information
- Family Issues
- Law Enforcement Issues

**DISCLAIMER:** THE INFORMATION IN THIS CIRCULAR RELATING TO THE LEGAL REQUIREMENTS OF SPECIFIC FOREIGN COUNTRIES IS PROVIDED FOR GENERAL INFORMATION ONLY AND MAY NOT BE TOTALLY ACCURATE IN A PARTICULAR CASE. QUESTIONS INVOLVING INTERPRETATION OF SPECIFIC FOREIGN LAWS SHOULD BE ADDRESSED TO FOREIGN COUNSEL.

**PROVISO:** This flyer seeks only to provide information; it is not an opinion on any aspect of U.S., Chinese, or international law. The U.S. Department of State does not intend by the contents of this flyer to take a position on any aspect of any pending litigation.

**SERVICE OF PROCESS IN CHINA:** China is a party to the Hague Convention on Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters (20 U.S.T. 361, T.I.A.S. 6638; 28 U.S.C.A. (Appendix following Rule 4 FRCvP); 16 I.L.M. 1339 (1977)). The Convention entered into force between the U.S. and China in 1991. *(See Rule 4(f)(1) F.R.Cv. P.)* For a detailed discussion of the operation of the Hague Service Convention, see our flyer on the Convention . Service can be effected in China under the Convention through the Chinese Central Authority. A request for service by the Central Authority can be made by an attorney by submitting the documents to be served under cover of form USM-94, in duplicate to the foreign central authority. "Duplicate" means a completed USM-94, one original English version of the documents to be served (summons must bear seal of the court); one translation of all documents to be served; plus a photocopy of all of the above which constitutes the second set of document). The Convention forms themselves (USM-94) do **not** need to be translated. The Convention form (USM-94) is available at the office of any United States Marshal and is reprinted in the Martindale Hubbell Law Directory, Law Digest Volume, Selected International Conventions, after the text of the Hague Service Convention.

**SERVICE BY MAIL PROHIBITED:** American courts have held that formal objections to service by mail made by countries party to a multilateral treaty or convention on service of process at the time of accession or subsequently in accordance with the treaty are honored as a treaty obligation, and litigants should refrain from using such a method of service. See *DeJames v. Magnificence Carriers, Inc.,* **654 F.2d 280 (3d Cir. 1981), [cert. den., 454 U.S. 1085];** *Porsche v. Superior Court* **, [123 Cal. App. 3d 755,] 177 Cal. Rptr. 155 (1981).** Service by registered mail should **not** be used in China, which notified the Hague Conference on Private International Law and the Government of the Netherlands (the depository) on accession, ratification or subsequently that it objects to service in accordance with Article 10, sub-paragraph (a) of the Convention, via postal channels. See Memorandum of the Administrative Office of the U.S. Courts (November 6, 1980) at Cumulative Digest of United States Practice in International Law, 1981-1988, Department of State, Office of the Legal Adviser, 1447 (1994) or Ristau, Sec. 3-1-9, p. 70.2 (1995 supp.).

**CHINA CENTRAL AUTHORITY:**

Department of Judicial Assistance and Foreign Affairs
Ministry of Justice of the People''s Republic of China
10 Chaoyangmen Nandajie, Chaoyang District
Beijing 100020
China
Tel. (8610) 6250-6239

**U.S. CENTRAL AUTHORITY:** Office of International Judicial Assistance, Civil Division, Department of Justice, 1100 L St., N.W., Room 11006, Washington, D.C. 20530, tel: 202) 307-0983; fax: (202) 514-6584.

Effective June 1, 2003, the U.S. Department of Justice is delegating the service of process function to a private contractor, Process Forwarding International, 910 5th Avenue, Seattle, WA 98104 USA, telephone: 206-521-2979; fax: 206-224-3410; email: info@hagueservice.net ; website: http://www.hagueservice.net .

This includes service of incoming requests for service in the United States under the Hague Service Convention and transmittal of proof of service to the requester. Requesters will be able to make payments directly at the http://www.hagueservice.net website and check on the status of active cases. See the website for the fee structure.

See the U.S. communication to the Hague Conference on Private International Law at http://www.hcch.net/e/status/stat14e.html#us.

Process Forwarding International is the only private process service company authorized to act on behalf of the United States Central Authority, in accordance with Articles 2-6 of the Convention, to receive requests for service from other Contacting States, proceed to serve the documents, and complete the certificate in the form annexed to the Convention. Process Forwarding International is responsible for the geographical coverage of its tasks in the following areas: the United States, Guam, American Samoa, Puerto Rico, U.S. Virgin Islands, and the Commonwealth of the Northern Mariana Islands.

be served should be translated into Mandarin Chinese. The Convention form itself (USM-94) does not need to be translated.

**COSTS:** Effective June 10, 2003, all requests for service of process in civil and commercial matters must be accompanied by an $89 service fee, payable via international money order. Otherwise, they will be returned to the applicant. The money order should be made payable to the Supreme People"s Court of the People"s Republic of China.

**METHODS OF SERVICE:** Article 5(b) - Personal Service: If personal service is required, strike out methods (a) and (c) on the Request for Service form (USM-94) and indicate method (b) on the form, noting that the documents should be served personally upon the person or company to be served.

**COMPLETING THE USM-94 FORM:** To obtain specific instructions on completing the USM-94 form, use the phone on your fax machine and dial 202-647-3000 to access our automated fax service. Enter the four digit code for the general flyer *Hague Service Convention* - 1051. Follow the prompts and the flyer will print automatically on your fax machine.

**TRANSMITTING THE COMPLETED REQUEST:** The completed request form and documents to be served, with accompanying translation (two copies of each), should be mailed by requesting counsel as the "applicant" directly to the foreign Central Authority as provided by Article 3 of the Convention. See our flyer on the *Hague Service Convention* for details regarding completion and transmittal of the forms and accompanying documents.

**OTHER METHODS:** In its instruments of accession, China objected to the methods of service provided for in Article 10 of the Convention, including service by mail (Article 10 (a)) as noted above.

**SUMMARY: Judicial assistance between the United States and China is governed by the Vienna Convention on Consular Relations, 21 U.S.T. 77, TIAS 6820, 596 U.N.T.S. 261, to which the United States and the People"s Republic of China are parties, and the U.S. - China Consular Convention, 33 U.S.T. 3048, TIAS 10209 and the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters. (See also 22 U.S.C. 4215, 4221.) The Government of the People"s Republic of China has advised the United States of the procedures it considers acceptable under Chinese law and practice concerning obtaining evidence in China. Taking evidence in China for use in foreign courts is problematic. China does not recognize the right of persons to take depositions, and any effort to do so could result in the detention and/or arrest of U.S. citizen participants. This flyer seeks to alert you to the problem so that you may advise appropriate parties.**

**VOLUNTARY DEPOSITIONS:** Upon its accession to the Hague Evidence Convention, China declared that the provisions of Chapter II of the Convention except for Article 15 will not be applicable. This means that diplomatic and consular officers may take the evidence without compulsion of nationals of the United States. However, Article 15 also contains a provision which states that a contracting state may declare that evidence may be taken by a diplomatic officer or consular agent only if permission to that effect is given upon application made by him or on his behalf to the appropriate authority designated by the declaring State. Traditionally, Chinese authorities do **not** recognize the authority or ability of foreign persons, such as American attorneys, to take voluntary depositions of willing witnesses, even before a U.S. consular officer, Article 27(1) of the U.S. - China Consular Convention of 1980 notwithstanding. In view of this position, the United States is seeking a clarification from the People"s Republic of China regarding its recognition of the right of U.S. consular officers to take voluntary depositions of U.S. citizens in China.

Given China"s declaration on accession to the Hague Evidence Convention that it does not consider itself bound by Articles 16-22 of Chapter II of the Convention, China could well deem taking depositions by American attorneys or other persons in China, as a violation of China"s judicial sovereignty. Such action could result in the arrest, detention, expulsion, or deportation of the American attorneys and other participants.

perform that function in China. Even a Chinese "notary" or other person empowered to administer oaths may not be recognized by Chinese authorities as empowered to do so in connection with depositions, given China"s strict position on that question. Conducting a deposition in a hotel with oaths to be administered by such a private person could have serious implications for the individual administering the oath, as well as other participants. In 1989, China permitted the taking of a limited deposition in the matter of *U.S. v. Leung Tak Lun, et al.;* **CR 88-0214-WHO** in an action before the U.S. District Court for the Northern District of California. China has advised the United States that the granting of authority for the taking of that deposition should not be regarded as a precedent. Efforts to obtain permission from the Chinese Ministry of Foreign Affairs to conduct depositions since that time have proven unsuccessful.

**CHINESE POSITION ON ISSUE OF OBTAINING EVIDENCE IN CHINA:** China has communicated its views on the subject of obtaining evidence in a series of diplomatic notes to the U.S. Embassy in Beijing. In diplomatic note No. 106 dated November 6, 1981, the Chinese Ministry of Foreign Affairs advised the U.S. Embassy that if a court of the United States requests the depositions of witnesses resident in the People"s Republic of China, it is necessary to submit a letter rogatory through the diplomatic channel. The Chinese Ministry of Foreign Affairs reiterated its government"s position on depositions of witnesses within China by foreign attorneys or consuls in Diplomatic Note No. 88 dated April 14, 1988. The note said that for a U.S. consular officer to receive or witness statements made under oath or affirmation in China in contravention of Chinese law would not conform to the provisions of the U.S. - China bilateral consular convention. Most recently, the Chinese government repeated this position in a Circular Diplomatic Note No. 77 dated September 11, 1996 to all Chiefs of Foreign Missions in Beijing. China deposited its instruments of accession to the Hague Evidence Convention December 8, 1997. The United States declared its acceptance of China"s accession to the Convention in June 1998. The Convention entered into force between the United States and the PRC in August 1998. The United States is seeking clarification from the Government of the People"s Republic of China concerning how the Hague Evidence Convention will be applied in China.

**TRANSMITTAL OF LETTERS OF REQUEST IN CIVIL AND COMMERCIAL MATTERS FOR COMPULSION OF EVIDENCE:** Requests for compulsion of evidence in civil and commercial matters may be forwarded directly to the Chinese Central Authority. Utilize the model letter of request annexed to the text of the Convention. See our general flyer on the operation of the *Hague Evidence Convention* .

**CHINESE CENTRAL AUTHORITY:**

Bureau of International Judicial Assistance
Ministry of Justice of the People"s Republic of China
10 Chaoyangmen Nandjie, Chaoyang District
Beijing 100020
China

**PREPARATION OF LETTERS ROGATORY FOR USE IN CHINA IN CRIMINAL AND ADMINISTRATIVE MATTERS:** In diplomatic note No. 106 dated November 6, 1981, the Chinese Ministry of Foreign Affairs advised the U.S. Embassy that a letter rogatory must bear the signature of the judge and seal of the court. Moreover, the letter rogatory should contain the following information: the name of the court making the request, the names of the parties, the subject matter of the litigation, the name and address of the witness, and written interrogatories and cross interrogatories. The letter rogatory and written questions must be accompanied by a Chinese translation. No further authentication is required. For more information, consult our general flyer *Preparation of Letters Rogatory* .

**USING LETTERS ROGATORY TO REQUEST DEPOSITIONS IN CHINA IN CRIMINAL AND ADMINISTRATIVE MATTERS:** In April 1991, the United States requested, without success, that Chinese and U.S. citizens be deposed in China in connection with two criminal cases. In those cases, Chinese judicial authorities did not reply to the letters rogatory from U.S. courts requesting permission to depose the witnesses. Since that time, there has been no success in obtaining permission from Chinese authorities to take depositions pursuant to a letter rogatory or letter of request. In view of the Chinese position on this question, at the present time, it does **not** appear possible to take the deposition of a witness located in China. Nevertheless, should you wish to pursue such a request, this office would, of course, be prepared to transmit a letter rogatory through appropriate diplomatic channels as explained in the *Preparation of Letters Rogatory* information flyer. As noted above, we have no indication that China would respond favorably to a letter rogatory requesting participation by American or Chinese counsel in the depositions of witnesses in China, or, as an alternative, that a request for depositions on written questions to be conducted by appropriate Chinese authorities would be granted.

**POSSIBLE OPTIONS AVAILABLE:** If the witness is willing to be deposed, one option might be to persuade the witness to travel to another country or jurisdiction where it is possible to conduct voluntary depositions. Consult our country-specific judicial assistance information flyers for details about procedures in other countries.

particularly successful in the past. Requests may take more than a year to execute. It is not unusual for no reply to be received or after considerable time has elapsed, for Chinese authorities to request clarification from the American court with no indication that the request will eventually be executed. It may be useful to consult local counsel in China for further guidance. But see discussion below regarding the role of lawyers in the Chinese judicial system. See note above regarding preparation of letters rogatory for use in China. Upon its accession to the Hague Evidence Convention, China declared that "in accordance with Article 23 of the Convention concerning the Letters of Request issued for the purpose of obtaining pre-trial discovery of documents as known in common law countries, only the request for obtaining discovery of the documents clearly enumerated in the Letters of Request and of direct and close connection with the subject matter of the litigation will be executed." The United States is seeking clarification from the Government of the People"s Republic of China regarding its implementation of the Hague Evidence Convention.

**CHINESE ATTORNEYS/AMERICAN LAW FIRMS IN CHINA:** It is our understanding that Chinese law offices are within the jurisdiction and authority of the Ministry of Justice. Under the Ministry of Justice is the Department of Public Notaries and Lawyers, which in turn establishes the legal advisory offices at the provincial and local levels. All lawyers and public notaries in China are part of this system, and as such are employees of the State. Lawyers in the Chinese system therefore do not necessarily assume the advocacy role expected of lawyers in the United States, but rather have obligations to the State as well as to their "clients." Anyone who retains the services of a lawyer in China should understand this difference between the American and Chinese legal systems. American law firms with a presence in China merely maintain "representative" offices which may provide legal advice to clients on commercial, tax, or economic law as it relates to investment in China by foreign firms. Although the foreign attorney may be permitted to "consult" on a case, foreigners who encounter legal difficulties may only be represented by a Chinese lawyer.

**CRIMINAL MATTERS:** Local, state and federal prosecutors interested in obtaining evidence in China may also wish to consult the Office of International Affairs, Criminal Division, U.S. Department of Justice, Washington, D.C. 20520 at (202) 514-0015.

**TRAVEL OF U.S., STATE, and LOCAL GOVERNMENT OFFICIALS:** When traveling to China in an official capacity in connection with a judicial assistance matter, it is necessary to obtain formal host country clearance from Chinese authorities through the U.S. Embassy in Beijing. Contact the Department of State, Office of American Citizens Services for assistance.

**ADDITIONAL INFORMATION:** Many of our judicial assistance flyers are also available on the Internet via the Department of State, Bureau of Consular Affairs home page at http://travel.state.gov under Judicial Assistance or through the main State Department home page at http://www.state.gov under Travel, Consular, or International Legal Assistance. See also, the Department of State, Office of the Legal Adviser for Private International Law (L/PIL) home page at http://www.state.gov/www/global/legal_affairs/private_intl_law.html for information regarding private international law unification. See also the home pages for many of our embassies which are linked to the Consular Affairs home page .

**Treaty Databases on the Internet:**

United States Department of State, Office of the Legal Adviser, Treaty Affairs, List of Treaties and Other International Agreements of the United States In Force
http://www.state.gov/www/global/legal_affairs/tifindex.html

United Nations (UN): Databases/Treaties at http://untreaty.un.org

Council of Europe (COE) http://www.coe.fr/index.asp under Texts/Treaties
http://conventions.coe.int/

Organization of American States (OAS): http://www.oas.org under Documents/Treaties and Conventions.

**U.S. Embassy and Consulates in China:** U.S. citizens visiting China are encouraged to register at the U.S. Embassy or one of the U.S. consulates in China. They may obtain updated information on travel and security within the country at the Embassy or one of the Consulates. It is possible to register with the U.S. Embassy in Beijing from the United States via the Embassy"s home page on the Internet at http://www.usembassy-china.org.cn . The Consular Section of the U.S. Embassy in Beijing is located at 2 Xiu Shui Dong Jie, Beijing - 100600; tel: 011-86-10-6532-3831; fax: 011-86-10-6532-3178. For the addresses, telephone and fax numbers of the Consulates in Guangzhou, Shanghai, Shenyang and Chengdu, consult our Country Specific Information for China available on the Department of State home page on the Internet or via our automated fax system as explained above.

**SELECTED REFERENCES:**

Chan, The Role of Lawyers in the Chinese Legal System, 13 Hong Kong L.J. 157 (1983).

Chen, Private International Law of the People's Republic of China: An Overview, 35 Am. J. Comp. L. 445, 486 (1987).

Chiu, Chinese Attitudes Toward International Law in Post-Mao Era 1978-1987, 21 Int"l Law. 1127,1166 (1987).

Devoe, Commercial Dispute Resolution between the United States and the People"s Republic of China: Problems and Prospects, 7 Suffolk Transnat"l L.J. 329 (1983-1984).

Doing Business in China: Legal Financial and Negotiating Aspects, Law & Business, Inc. (1979).

Fu, Legal Person in China: Essence and Limits, 41 Am. J. Comp. L. 261, 298 (1993).

Hsia & Zeldin, Recent Legal Developments in the People"s Republic of China, 28 Harv. Int"l L. 249, 272 (1987).

Ingriselli, International Dispute Resolution in the People"s Republic of China, Int"l. Bus. Law. 376 (October 1984).

Keller, Sources of Order in Chinese Law, 42 Am. J. Comp. L. 711, 760 (1994).

Lubman & Wajnowski, Criminal Justice and the Foreigner, China Bus. Rev., 30 (Nov-Dec. 1985).

Mitchell & Stein, U.S. - China Commercial Contracts, 20 Int"l. Law. 897-920 (1986).

Spanogle & Baranski, Chinese Commercial Dispute Resolution Methods, 35 Am. J. Comp. L. 761, 800 (1987).

Wang, The Judicial Explanation of Chinese Criminal Law, 43 Am. J. Comp. L. 569, 580 (1995).

Zheng, Lawyers and Legal Practice in China, 36 Am. J. Comp. L.473, 524 (1988).

Zheng, Bankruptcy Law of the People"s Republic of China: Principles, Procedure and Practice, 19 Vand. J. Transnat"l. L. 683,684-94 (1986).

Zheng, Foreign Banking in the People"s Republic of China: Laws and Practice, 21 Int"l. Law. 437, 486 (1987).

**Questions:** If you have further questions, contact the East Asia and Pacific Division of the Office of American Citizens Services and Crisis Management, CA/OCS/ACS/EAP, Department of State, Room 48l7 N.S., Washington, D.C. 20520, tel: (202) 647-6769; fax: (202) 647-2835.

**WHAT IS THE OFFICE OF AMERICAN CITIZENS SERVICES:** The Office of American Citizens Services (ACS), a component of the Directorate of Overseas Citizens Services in the Department of State"s Bureau of Consular Affairs, is responsible, inter alia, for receiving and transmitting requests for international judicial assistance under 28 U.S.C. Section 1781 (see 22 C.F.R. Section 92.67). ACS+ also addresses other legal assistance requests that foreign states may make by diplomatic channels to the United States, including those for which assistance may be available under 28 U.S.C. 1782. ACS+ is also responsible for other aspects of international judicial assistance for the Department of State. This responsibility is derived from U.S. consular treaty obligations, 22 U.S.C. 4215, 4221, 22 C.F.R. Part 92 et seq., and authority delegated to the Bureau of Consular Affairs by the Secretary of State.

Return to Judicial Assistance Page

# EXHIBIT B

THE GEORGE WASHINGTON UNIVERSITY LAW SCHOOL
PUBLIC LAW AND LEGAL THEORY WORKING PAPER NO. 236
LEGAL STUDIES RESEARCH PAPER NO. 236

# THE ENFORCEMENT OF UNITED STATES COURT JUDGMENTS IN CHINA: A RESEARCH NOTE

## DONALD C. CLARKE

**(May 27, 2004).**

THE GEORGE WASHINGTON UNIVERSITY LAW SCHOOL
WASHINGTON DC

This paper can be downloaded free of charge from the
Social Science Research Network at:
http://ssrn.com/abstract=943922

THE ENFORCEMENT OF UNITED STATES COURT JUDGMENTS IN CHINA: A RESEARCH NOTE

*Donald Clarke*
*George Washington University Law School*
*May 27, 2004*

*Abstract*

*Whether the judgments of United States courts can and will be enforced in China is a question that will be increasingly asked as economic ties grow between the two countries. At present, at least, the answer is straightforward: U.S. judgments will not be enforced. Chinese law requires the existence of a treaty or* de facto *reciprocity in order to enforce a foreign judgment; neither exists between the United States and China. Research reveals specific cases in which enforcement was refused and no cases in which enforcement was granted. Thus, the best alternative for litigants seeking the assistance of Chinese courts is to obtain an arbitration award in a New York Convention member country—China is a member itself—or to litigate in Chinese courts.*

Whether the judgments of state and federal courts in the United States will, might, or can be enforced in China, both as a matter of Chinese law and in practice, is a question that occasionally crops up in litigation now and is bound to become more common as economic and other ties between the two countries grow denser. Unlike many questions about the Chinese legal system, however, this one can be answered with a fair degree of confidence both as to formal law and as to actual practice: almost certainly no, at least where a defendant is present and objecting. This research note sets forth the grounds for this conclusion.

The basic rule of Chinese law on the enforcement of foreign judgments is set forth in Articles 267 and 268 of the Civil Procedure Law. These provide in full as follows:[1]

> *Art. 267.* Where it is necessary for the people's courts of the People's Republic of China to recognize and enforce legally effective judgments and rulings of foreign courts, a party may apply for recognition and enforcement directly to the Intermediate Level People's Court having

---

[1] The translation is my own.

> jurisdiction; a foreign court may also, in accordance with the provisions of an international treaty which the state of the foreign court and the People's Republic of China have concluded or to which they are parties, or in accordance with the principles of mutual benefit [reciprocity], request the people's court to recognize and enforce the judgment.
>
> *Art. 268.* The people's court shall, in accordance with the provisions of an international treaty which the state of the foreign court and the People's Republic of China have concluded or to which they are parties, or in accordance with the principles of mutual benefit [reciprocity], undertake a review of the legally effective foreign court judgment or ruling the recognition and enforcement of which is applied for or requested. If upon such review it concludes that such judgment does not violate the basic principles of the law of the People's Republic of China or state sovereignty, state security, or the public interest of society, it shall issue a ruling recognizing the judgment's validity; where enforcement is necessary, it shall issue an order for enforcement and enforce the judgment in accordance with the provisions of this Law. Where to do so would violate the basic principles of the law of the People's Republic of China or state sovereignty, state security, or the public interest of society, the court shall not grant recognition and enforcement.

In brief, Chinese law requires that there exist a treaty or reciprocity between the foreign state and China in order for a foreign judgment to be enforced.

At present there exists no treaty between the United States and China obligating China to enforce U.S. judgments, and I do not believe that a Chinese court would enforce a U.S. judgment on any other grounds, such as the existence of reciprocity.

First, reciprocity does not in fact appear to exist. My research has failed to uncover a single case in which U.S. courts have enforced Chinese court judgments without inquiring into the underlying merits of the dispute.

Second, Chinese courts do not *believe* that reciprocity exists sufficient to support the enforcement of a U.S. court judgment. My research has found no cases in which a U.S. court judgment has been enforced on any grounds.

Third, the recognition and enforcement in China of foreign court judgments from *any* country—not just the United States—is extremely rare and occurs only in special circumstances. I have found three cases from the post-Mao era (*i.e.*, the era to which the current legal system may be said to belong) in which a foreign judgment was recognized. All three cases involved foreign divorce proceedings between Chinese citizens, at least one of whom was living overseas. More importantly, *none* of the three was contested. In each case, both parties requested the Chinese court to recognize the divorce. Finally, none of the cases actually required the courts to enforce anything. They were asked merely to confirm the validity in China of the divorce decree, thus allowing the party resident in China to re-marry without having to initiate separate divorce proceedings in China.[2]

The only report of a case I have found where the enforcement of a foreign judgment might have been contested was one from the 1950s, when China and the U.S.S.R. had close and friendly relations. In that case, despite the absence of a treaty or a practice of reciprocity, China and the U.S.S.R. agreed through diplomatic channels that Chinese courts would enforce a U.S.S.R. judgment for child support against a Soviet

---

[2] *See* Wang Lijian Case (No. 413), in 2 RENMIN FAYUAN ANLI XUAN -- MINSHI JUAN [Selected Cases from the People's Courts—Civil Volume] 2027 (Zuigao Renmin Fayuan Zhongguo Yingyong Faxue Yanjiusuo [Supreme People's Court Institute for Practical Legal Research] ed., 2000); Jiang Xiaomin Case (No. 416), in *id.*, at 2036; Li Geng Case (No. 216), in *id.*, at 2030; *also reported in* DU XINLI, GUOJI SIFA JIAOXUE ANLI [Cases for the Study of International Private Law] 350-51 (1999).

citizen living in China.[3] The same source also mentions, without any details, the enforcement of an East German judgment;[4] I do not know whether that was contested or not, or what the subject matter was. As these cases apparently had no impact on Chinese nationals, date from a completely different era in Chinese history, and involve political issues, they have little if any contemporary relevance.

By contrast, there *is* a modern case in which enforcement of a foreign judgment was refused. In 1994, the Dalian Intermediate Level People's Court considered the application of a Japanese national for the enforcement of a Japanese court judgment against another Japanese national.[5] That judgment called for the defendant to transfer its equity interest in a Chinese company to the plaintiff[6] in satisfaction of a debt. The Dalian court rejected the application, finding that neither a treaty nor reciprocity existed between China and Japan.

---

[3] *See* YUAN CHENGDI, GUOJI SIFA YUANLI [Principles of International Private Law] 368 (2003).

[4] *See id.*

[5] *See* Riben gongmin Wuwei Huang shenqing Zhongguo fayuan chengren he zhixing Riben fayuan panjue an [The Case of the Application of Japanese Citizen Gomi Akira to a Chinese Court for the Recognition and Enforcement of a Japanese Court Judgment], *Zuigao Renmin Fayuan Gongbao* [Supreme People's Court Gazette], No. 1, Mar. 20, 1996, at 29.

[6] This is my best understanding of what the judgment called for. The case report states that the judgment named the Chinese company as a third party and instructed it to transfer to the plaintiff the defendant's investment in it of RMB 4.85 million *yuan*. This may mean that the judgment purported to order the Chinese company in effect to redeem some or all of the defendant's equity share at the stated price and to pay the money to the plaintiff; it may also mean that the judgment purported to order the Chinese company to transfer to the plaintiff's name some or all of the defendant's equity share in the company represented by its original investment of RMB 4.85 million *yuan*.

I have found only two cases in which the enforcement of a U.S. court judgment was sought in China. In both cases, the applicant was unsuccessful. In 1967, the Yantai Municipal People's Court rejected an application to recognize and enforce a divorce judgment from a U.S. court.[7] In 1985, the Supreme People's Court issued a directive to the Shanghai Higher-Level People's Court (one level below the Supreme People's Court) instructing it not to recognize a U.S. divorce judgment, but instead to consider the case anew.[8]

In short, there is to date no evidence suggesting that a Chinese court would enforce the judgment of a United States court, and considerable evidence suggesting it would not. Parties seeking the assistance of Chinese courts in their disputes should either seek arbitration—arbitration awards from New York Convention member countries are enforceable in China—or litigate in China.[9]

---

[7] *See* LI WANG, GUOJI SUSONG JINGHE [Competition and Cooperation in International Litigation] 240 (2002). I do not believe that this case has any contemporary significance—it occurred at the height of the Cultural Revolution—and include it only for the sake of completeness.

[8] *See* Zuigao renmin fayuan guanyu lü-Mei huaqiao Zhang Xuefen xianhou xiang woguo fayuan he Meiguo fayuan qisu lihun Meiguo fayuan yi panjue lihun woguo fayuan shifou ke zai zuo panjue wenti de pifu [Reply of the Supreme People's Court on the Question of Whether Chinese Courts May Make an Additional Judgment Where Zhang Xuefen, an Overseas Chinese Resident in America, Has Successively Brought Divorce Actions in Chinese and American Courts and the American Court Has Already Made a Divorce Judgment], Sept. 19, 1985, available at www.chinalawinfo.com. This document is also discussed in LI WANG, *supra* note 7, at 240.

[9] *See generally* Donald C. Clarke & Angela H. Davis, *Dispute Resolution in China: The Arbitration Option*, in CHINA 2000: EMERGING INVESTMENT, FUNDING AND ADVISORY OPPORTUNITIES FOR A NEW CHINA 151-162 (Asia Law and Practice ed., 1999).