Exhibit 7

Robert S. Mallin
312-321-4221
rmallin@usebrinks.com

**BRINKS**

**HOFER**

**GILSON**

**&LIONE**

A Professional Corporation

Intellectual Property
Law Worldwide

January 23, 2008

*Via Facsimile Transmission to 858-824-9073*
*And U.S. First Class Mail*

Melody A. Kramer, Esq.
Kramer Law Office, Inc.
9930 Mesa Rim Rd.
Suite 1600
San Diego, CA 92121

Re:    **Sorensen Research & Development Trust v.**
       **One World Technologies Inc.** *et al*
       **Case No. 08 CV 0060 BTM CAB**

Dear Ms. Kramer

I understand that Sorensen Research & Development Trust ("SRDT") filed a complaint alleging infringement of U.S. Patent No. 4,935,184 against One World Technologies, Inc.; Emerson Electric Co.; Ridge Tool Co.; and Ridgid, Inc. I note that in paragraph 28 of the complaint, SRDT alleges that "[t]o date, none of the Defendants have presented any admissible evidence of the actual manufacturing process of the Accused Products."

Enclosed herewith is a copy of a declaration explaining the over mold process used for the external housings of all Ridgid-branded products including the "Accused Products" identified in both the complaint and our prior correspondence. In view of this declaration, I ask that you voluntarily dismiss your complaint against all of the defendants in the above-captioned case. If you choose not to accept the declaration and voluntarily dismiss the action, we plan to use this declaration and prior correspondence as needed in the litigation. Please let me know what you decide to do about dismissing the complaint.

If you have any questions, please let me know.

Best regards

Robert S. Mallin

RSM:jms

Enc.

cc:    Al Deavers, Esq.

I, William Chen, declare:

1.    I am a P.R.China citizen. I am presently the Tooling Manager at Techtronic Industries Co. Ltd ("TTI"). TTI is located in Hong Kong and has a principal place of business at 388 Castle Peak Road, Tsuen Wan, NT, Hong Kong. One World Technologies, Inc. ("OWT"), Techtronic Industries North America, Inc. ("TTINA") and Ryobi Technologies, Inc. ("RTI") are subsidiaries of TTI. I have knowledge acquired during the ordinary course of my duties for TTI of the facts contained within the following paragraphs, and could and would competently testify to TTI's, OWT's, TTINA's and RTI's corporate knowledge thereto if called as a witness in a court of law.

2.    TTI is the manufacturer of all of the following Ridgid-branded power tools:

| RIDGID-branded PRODUCTS | Model No. |
|---|---|
| Ridgid 18V Cordless Reciprocating Saw | R844 |
| Ridgid HD 3/8" VSR Drill | R7000 |
| Ridgid HD Reciprocating Saw | R3000 |
| 18V Cordless ½" Hammer Drill | R8411503 |
| 18V Cordless ½" Drill | R84015 |
| 18V Cordless Drill | R84001 |
| 14.4V Cordless ½" Drill | R83015 |
| 12V Right Angle Impact Driver | R82233 |
| 14.4V Impact Driver | R82320 |
| 12V Cordless 3/8" Drill | R82001 |
| Heavy Duty 3 speed ½" Right Angle Drill | R7130 |
| Heavy Duty 2 speed ½" VSR Drill | R7100 |
| Heavy Duty VSR Drywall Screwdriver | R6000 |
| Heavy Duty ½" VSR Hammer/Pulse Drill | R5010 |
| 7 ¼" Worm Drive Saw | R3210 |
| Heavy Duty 7 ¼" Circular Saw | R3200 |
| 18V Cordless Jig Saw | R843 |
| Variable Speed Orbital Jig Saw | R3120 |
| Heavy Duty 11A Reciprocating Saw | R3001 |

| 18V Cordless Hand Planer | R848 |
|---|---|
| Heavy Duty Variable Speed Belt Sander | R2720 |
| 9.6V Pivoting Screwdriver | R81030 |

3.    I have personal knowledge about the overmold injection process used for the external plastic housings for the Ridgid-branded model no. R7000 drill shown in drawing number D-5411 (attached hereto at Ex. 1). The overmold process used for producing the external plastic housing for the R7000 shown in Ex. 1 is as follows:

Step 1)    The first plastic material component 20 is injected into a first mold to form the plastic part which can be described as being the substrate part.

Step 2)    The substrate part is transferred by hand to a second, separate mold and then a second plastic material component 32 is injected into the second mold to cover the substrate part and form the housing shown in the drawings attached at Ex. 1.

3.    I have personally witnessed the overmold process described in paragraph 3 above. This same overmold process described in paragraph 3 above is used for the external housings for each of the products identified in paragraph 2 above and on all of the other Ridgid-branded products made, used, sold or offered for sale, or imported into the U.S by TTI. For the past 6 years, no other overmold process has ever been used for these parts.

4.    TTINA, OWT, and RTI do not manufacture any of the products identified in paragraph 2 above. None of the products identified in paragraph 2 above are manufactured in the United States. They are all manufactured in China by TTI.

5.    TTI and its subsidiaries have no corporate relationship with Emerson Electric Co., Ridge Tool Company, and Ridgid, Inc. ("Emerson"). Emerson has no involvement with the manufacture of the products identified in paragraph 2 above.

2

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 23th_ day of Jan, 2008.

_____  _William Chen_

3



RIDGID R7000 HEAVY DUTY VSR DRILL

FIRST PLASTIC MATERIAL COMPONENT 20

SECOND PLASTIC MATERIAL COMPONENT 22

NOT TO SCALE

D-5411

Exhibit 8

**Kramer Law Office, Inc.**

9930 Mesa Rim Rd., Ste. 1600
San Diego, California 92121
Phone 858/362-3150
Fax 858/824-9073

**Melody A. Kramer, Esq.**
mak@kramerlawip.com

January 23, 2008

Mr. Robert S. Mallin
Brinks Hofer Gilson & Lione
NBC Tower, Suite 3600
455 N. Cityfront Plaza Drive
Chicago, IL 60611-5599

**CONFIDENTIAL OFFER OF COMPROMISE**
Subject To Federal Rules of Evidence § 408

RE:     Sorensen Research & Development Trust v. Emerson Electric Co., et al
        USDC for Southern California, Case No. 08cv0060

Dear Mr. Mallin:

        I have received your letter dated January 23rd and the enclosed document bearing
the purported signature of a Chinese national.

        Based upon my detailed review of that document, and my prior extensive research
into the issue of inadmissibility of declarations from Chinese nationals and general
requirements in the Federal Rules of Evidence, we conclude that the document does not
rise to the level of admissible evidence for numerous reasons. I also note that the
document contradicts prior statements made by you and Mr. Bugos, and defies credulity
in its claim that a tooling manager in China could competently testify about all of the
relevant corporate affairs of at least six United States companies.

        For these reasons and more, we decline your suggestion that the pending lawsuit
should be dismissed.

                                            Sincerely,

                                            Melody A. Kramer

cc:  Albert B. Deaver, Jr.

Exhibit 9

COPY

```
 1              IN THE COURT OF COMMON PLEAS

 2         OF PHILADELPHIA COUNTY, PENNSYLVANIA

 3  JAMES MARKHORST          :
                             :
 4        Plaintiff          :
                             :
 5            vs.            :
                             :
 6  RIDGID, INC.,            :  FEBRUARY TERM, 2006
                             :
 7        Defendant          :  NO. 2539

 8

 9                     -  -  -

10               December 13, 2006

11                     -  -  -

12       Telephonic deposition of ROBERT BUGOS,

13  taken pursuant to notice, at the law offices of

14  Sacchetta & Baldino, 308 East Second Street,

15  Media, Pennsylvania, on the above date,

16  beginning at 3:05 p.m., before Margaret

17  Robinson, Court Reporter and Notary Public.

18                     -  -  -

19

20

21

22
                BLUE ROCK REPORTING, INC.
23                 370 Blue Rock Road
                 West Chester, PA  19382
24                   (610) 761-5150
```

2

1   APPEARANCES:

2           BRUCE MacKNIGHT, ESQ.
            SACCHETTA & BALDINO
3           308 East Second Street
            Media, Pennsylvania   19063
4             Counsel for Plaintiff

5
            MARGARET WENKE, ESQ.
6           CONNOR, WEBER & OBERLIES
            171 West Lancaster Avenue
7           Suite 100
            Paoli, Pennsylvania   19301
8             Counsel for Defendant

9   ALSO PRESENT:

10          Mark Rowe, Esq.
                       - - -
11

12

13

14

15

16

17

18

19

20

21

22

23

24

       Blue Rock Reporting, Inc.   610-761-5150

3

```
 1                    I N D E X
 2   WITNESS                                       PAGE
 3   ROBERT BUGOS
 4              By Mr. MacKnight                      4
 5
 6                    -  -  -
 7
 8
 9                E X H I B I T S
10
11   NO.            DESCRIPTION              PAGE
12
13           (No Exhibits Were Marked)
14
15
16                    -  -  -
17
18
19
20
21
22
23
24
```

Blue Rock Reporting, Inc.   610-761-5150

ROBERT BUGOS                          4

1              (It was stipulated by and between

2      counsel that signing, sealing, certification and

3      filing be waived; and that all objections,

4      except as to the form of the question, be

5      reserved until the time of trial.)

6                        -  -  -

7              THE WITNESS:  Let me just at the

8      outset, note that I am general counsel for the

9      corporation pertaining to the deposition for the

10     limited purpose of identifying ownership

11     relationships between corporate entities, not a

12     general submission or a waiver of the attorney

13     client privilege or attorney client privilege

14     for any other purpose.  If you agree to that.

15             MR. MacKNIGHT:  That's fine.  If I

16     ask you anything out of line, I'm sure you'll

17     let me know or Peggy will let me know.

18             MS. WENKE:  Bob, your voice was

19     trailing a little bit, so you might want to stay

20     near the phone.

21             THE WITNESS:  I will hug the

22     phone.  Mark Rowe just walked into the room.  I

23     just want to let it be known that he is present.

24             MR. MacKNIGHT:  Okay.


       Blue Rock Reporting, Inc.  610-761-5150

ROBERT BUGOS                    5

1              THE WITNESS:  He's an attorney.

2                         - - -

3              ROBERT BUGOS, duly sworn according

4    to the law, was examined and testified as

5    follows:

6                         - - -

7    BY MR. MacKNIGHT:

8    Q.     Sir, before we started today, I indicated

9    I would forego all the particularities with

10   regard to how we conduct a deposition, because

11   it's my understanding that you are an attorney,

12   so I will just begin with my questioning if

13   that's okay with you.

14   A.     That's fine.

15   Q.     Sir, can you just give me your full name

16   please?

17   A.     My name is Robert A. Bugos, B as in boy,

18   U-G-O-S.

19   Q.     Mr. Bugos, who do you represent?

20   A.     I'm sorry, I don't know how to answer

21   that.

22   Q.     Who do you work for?

23   A.     Okay, I am general counsel for Techtronic

24   Industries North America, Inc. and its various

          Blue Rock Reporting, Inc.  610-761-5150

ROBERT BUGOS                          6

1   subsidiaries.

2   Q.      And how many subsidiaries are there?

3   A.      There are a number of subsidiaries,

4   including One World Technologies, Inc.

5   Q.      And how long have you worked for that

6   employer?

7   A.      I have worked for this employer since its

8   inception, sometime between 2000 and 2002.  I

9   have been an employee of the organization that

10  operates the same businesses as that corporate

11  entity, since those businesses were created in

12  June of 2000 -- June of 2000.

13  Q.      Okay.  One of the subsidiaries is One

14  World Technologies.  What is the relationship

15  between One World Technologies and Ridgid, Inc.,

16  if you know?

17  A.      There is no relationship.

18  Q.      Do you know if One World Technologies --

19  A.      Wait a minute, I'm sorry, there may be

20  a -- there may be a contractual relationship

21  regarding the servicing of products, but I don't

22  believe that that contractual relationship is

23  with Ridgid.

24  Q.      Does One World Technologies manufacture

Blue Rock Reporting, Inc.  610-761-5150

ROBERT BUGOS                                  7

1   any products under the Ridgid name?

2   A.     No.

3   Q.     Give me one second.

4   A.     Would you like me to tell you what One

5   World Technologies, Inc. does in connection --

6   Q.     I was getting to that.  Can you just tell

7   me what you just asked me to ask you, what they

8   do with regard to the products?

9   A.     One World Technologies, Inc., is a wholly

10  owned subsidiary of Techtronic Industries North

11  America, Inc.

12                One World Technologies, Inc., also

13  acts as a supplier of Ridgid brand products to

14  Home Depot, which I understand owns a license

15  for the use of the Ridgid trademark.

16  Q.     Okay, so another entity manufactures the

17  tools?

18  A.     Ridgid brand products are marketed by One

19  World Technologies to the Home Depot, are

20  sourced through a parent company, ultimate

21  parent company, Techtronic Industries Company

22  Limited.

23  Q.     Does One World Technology design the

24  tools?

Blue Rock Reporting, Inc.   610-761-5150

ROBERT BUGOS                                    8

1    A.     One World Technologies, Inc., I imagine

2    has had design input in connection with the line

3    of various Ridgid brand products.

4    Q.     Can you tell me how a Ridgid tool is

5    made?

6    A.     A Ridgid tool is made by a manufacturer,

7    which -- I'm sorry, I don't know how to answer

8    that question.

9    Q.     Sir, are you familiar with the tool

10   that's in question in this case, the twelve inch

11   compound miter saw with exact line?

12   A.     I am familiar with the Ridgid line of

13   power tools and I have seen the tool that's

14   mentioned in this case.  I have familiarity with

15   the particulars of the design.

16   Q.     Was that tool distributed by One World

17   Technologies?

18   A.     It is.

19   Q.     With regard to registered agent for

20   service, is there a registered agent in South

21   Carolina for One World Technologies?

22   A.     Yes.

23   Q.     Are you aware if there's a registered

24   agent in South Carolina for Ridgid?

Blue Rock Reporting, Inc.   610-761-5150

ROBERT BUGOS

9

1   A.      No, I am not aware.

2   Q.      And where is that registered agent

3   located with regard to One World Technologies?

4   A.      Sitting at my desk.

5   Q.      You're sitting at your desk.

6   A.      I'm the registered agent for One World

7   Technologies, Inc., in the state of South

8   Carolina.

9   Q.      Can you tell me sir, do you know somebody

10  with the last name, it looks like Brock,

11  B-R-O-C-K?

12  A.      I do know somebody with the last name

13  Brock, B-R-O-C-K.

14  Q.      With the first initial C?

15  A.      No.

16  Q.      Excuse me?

17  A.      No.

18  Q.      I have a copy of a return receipt for

19  some registered mail that was mailed to 1428

20  Pearman Dairy Road, Anderson, South Carolina,

21  29625.

22  A.      Yes.

23  Q.      Is that your address?

24  A.      It is my address, it's our office

Blue Rock Reporting, Inc.    610-761-5150

ROBERT BUGOS                                    10

1    address, yes.

2    Q.     And it's addressed to Ridgid, Inc., and

3    it was signed for by somebody with the last name

4    of Brock, on March 3, 2006.

5    A.     Okay.

6    Q.     Would that -- and I want to represent to

7    you sir, that that was the Complaint in this

8    matter.  Would that come across your desk?

9    A.     I'm not aware that it has.

10   Q.     Are you permitted to sign and accept

11   Complaints served at that office, addressed to

12   Ridgid?

13   A.     I personally do not have authority to

14   accept documents on behalf of Ridgid, Inc.

15   Q.     And sir, from your memory or from your

16   records, do you have any indication that you

17   received this Complaint against Ridgid, back in

18   March of 2006?

19   A.     I do not.

20   Q.     If you had received it, would you have

21   forwarded it to Ridgid?

22   A.     Um, I would anticipate that our

23   department may have.  I don't know.  Don't know

24   what would have happened.  As I said, I don't

ROBERT BUGOS

11

1   have a recollection of it happening.

2   Q.    So you don't know sir, what steps were

3   taken if that Complaint was served there?

4   A.    I don't know what steps were taken in

5   connection with that document.  I don't have a

6   recollection.

7   Q.    Sir, do you know -- are you familiar with

8   the manual for the tool that's in question here?

9   A.    I am familiar with the manuals in

10  general, that are used on Ridgid brand products

11  that are manufactured through One World

12  Technologies, Inc.

13  Q.    And would you confirm or would you agree

14  with the statement that nowhere on that tool, is

15  it indicated that it is distributed by One World

16  Technologies?

17  A.    I can't confirm or deny that statement.

18  I would refer you to the owner's manual itself.

19  Q.    Sir, the warranties with regard to this

20  product, does Ridgid provide the warranty or

21  does One World Technology provide the warranty?

22  A.    One World Technologies, Inc., provides

23  any warranty on products that it services, to

24  include this one.

ROBERT BUGOS                              12

1   Q.     Can you tell me sir, have you ever

2   received anything by way of a Complaint, at your

3   address there, addressed to Ridgid?

4   A.     I have no recollection of receiving mail

5   addressed to Ridgid.

6   Q.     Ever?

7   A.     None.

8          MS. WENKE:  I'd like to make a

9   statement for the record.  A few moments ago

10  there was a reference that the service was of a

11  Complaint.  That document was a Writ, not a

12  Complaint.

13         MR. MacKNIGHT:  I apologize for

14  the mistake.

15  BY MR. MacKNIGHT:

16  Q.     Sir, you spoke about the owner's manual.

17  In the owner's manual, it mentions One World

18  Technology and gives a toll free number.  Is

19  that your understanding?

20  A.     I would be surprised if it didn't.

21  Q.     Do you know if you call that number,

22  whether they represent themselves as One World

23  Technologies or Ridgid?                    :

24  A.     I believe if you call that number, you

Blue Rock Reporting, Inc.   610-761-5150

ROBERT BUGOS                    13

1   would get our service department, which is at

2   the other end of this building.  I don't know --

3   I would -- I have no reason to believe they

4   would represent themselves as Ridgid.

5   Q.      Have you ever had the opportunity to call

6   that number and ask that question?

7   A.      I have not.

8   Q.      And you have no knowledge about whether

9   Ridgid has a registered agent in South Carolina?

10  A.      I have no reason to believe they do.  I

11  have no knowledge that they have a presence in

12  South Carolina.

13  Q.      Just give me one second, I'm just looking

14  at something.  Sir, I'm going to -- I have an

15  e-mail here and unfortunately you don't have it,

16  but it's an e-mail from Ms. Wenke, indicating we

17  had asked about some information identifying the

18  product -- I'm sorry, Lisa Cauley, who works

19  with Ms. Wenke, and we had inquired about some

20  of the information about this product and we

21  received back information that it was designed

22  and distributed by One World Technologies and

23  they gave us your address which I mentioned

24  earlier, and sold through Home Depot and the

Blue Rock Reporting, Inc.   610-761-5150

ROBERT BUGOS

14

1    date of manufacture and the year.

2                    Do you know how she would have

3    obtained that information?  Would it have been

4    through you or through Ridgid?

5    A.      She would have obtained that information

6    through Mark Rowe of our legal department and

7    she would have obtained it through us, because

8    we would be the people familiar with the

9    product, the serial numbers and the coding

10   system and Ridgid, Inc. would not.

11   Q.      Do you know if it was relayed to -- this

12   e-mail is dated Monday August 7, 2006.  Do you

13   know if it was relayed to your office, as to why

14   this information was being requested?

15   A.      I do not.

16   Q.      Sir, if the certified mail that was sent

17   to you was the Writ, was not returned to our

18   office, is it reasonable to believe that you

19   either retained it or forwarded it on to Ridgid?

20   A.      I have no information as to that.

21   Q.      Do you know why they came to you instead

22   of going to Ridgid, to find out where the

23   product was manufactured and distributed from?

24   A.      It was our product.

Blue Rock Reporting, Inc.  610-761-5150

ROBERT BUGOS                                              15

1     Q.      What's the general relationship between

2     Ridgid and One World Technologies?

3     A.      Between who?

4     Q.      Between One World Technologies and

5     Ridgid.

6     A.      By Ridgid, are you referring to Ridgid,

7     Inc.?

8     Q.      Well whatever you understand it to be.

9     A.      Ridgid is a trademark.

10    Q.      Okay, and how are you permitted to use

11    that trademark?

12    A.      We manufacture Ridgid brand products as a

13    supplier to Home Depot.  There's a trademark

14    license from the owner of the trademark, which I

15    presume to be, as you've been calling them,

16    Ridgid, Inc., so I believe that's the trademark

17    owner.  I understand it to be some entity owned

18    by or controlled by Emerson.

19    Q.      Emerson.  That was my next question.

20    What's the relationship between Emerson and One

21    World Technologies?

22    A.      I believe we service, we provide customer

23    service under contract for certain products that

24    were manufactured by Emerson.


      Blue Rock Reporting, Inc.  610-761-5150

ROBERT BUGOS                    16

1   Q.     And would it be accurate to say that

2   Emerson and One World Technologies entered into

3   a partnership back in 2003?

4   A.     That would be absolutely incorrect.

5   Q.     Well what's the relationship between

6   Emerson and One World Technologies?

7   A.     One World Technologies entered into a

8   contract with Emerson.  We provide customer

9   service in connection with certain products that

10  were manufactured and sold by Emerson.

11  Q.     Sir, I have a document here that I

12  printed from the internet, from the Emerson

13  website, regarding Emerson professional tools

14  and One World Technologies.

15          The title of it is, Emerson

16  Professional Tools and One World Technologies to

17  partner on Ridgid power tool line.

18  A.     I'm sorry, what does that say?

19  Q.     It says:  Emerson professional tools and

20  One World Technologies to partner on Ridgid

21  power tool line.

22          And it's from the Emerson website.

23  And basically there's a Pat Sly quoted as the

24  Emerson executive vice-president and the Emerson

Blue Rock Reporting, Inc.  610-761-5150

ROBERT BUGOS

17

1    professional tool business leader, who states:

2    This new partnership and business model will

3    further enhance an innovative line of power

4    tools that already has the respect of end users

5    everywhere.

6    A.    Okay.

7    Q.    In your mind, is partnership the wrong

8    word for it, or is this article inaccurate?

9    A.    Unfortunately I am not the person who

10    chose that word.  I'm not the person who chose

11    that document.

12              I have not seen that document;

13    however, I take it that you're trying to impose

14    a legal definition of an entity in the word

15    choice of marketing people, which I know to be

16    totally inconsistent with reality.

17    Q.    And you indicated that you don't

18    manufacture any of the tools, you just

19    distribute them; is that right?

20    A.    That's correct.

21    Q.    Okay, so it would also be inaccurate for

22    this article, when they go on to state -- and

23    this is from a Bob Freitag, executive

24    vice-president of One World Technologies.  Do

ROBERT BUGOS                    18

1   you know who he is?

2   A.      I know who he is.

3   Q.      There's a quote in here from him that

4   says:   This is quite an honor for One World

5   Technologies to manufacture these bench top and

6   stationary tools.

7   A.      We source the tools, so in his mind, we

8   manufacture them, but in order for me to give

9   you an accurate statement, you've asked me if --

10  Q.      Who manufactures the tools?

11  A.      Well a variety of people manufacture the

12  products.  They are sourced through our parent

13  company and it might be manufactured by them or

14  it might be manufactured by a third party that

15  they contract.

16  Q.      Okay, so let me try to understand this.

17  You source the tools, which means?  What does

18  source mean in your mind?

19  A.      Well Home Depot buys them from us, we buy

20  them from somebody else.  The third party we buy

21  them from is our parent company in Hong Kong.

22            Our parent company in Hong Kong

23  may be the manufacturer, or it may be somebody

24  else.


    Blue Rock Reporting, Inc.  610-761-5150

19

ROBERT BUGOS

1              In the mind of somebody who's

2   marketing the tools, we manufacture the product,

3   but to be accurate for purposes of the

4   deposition, I answered you as no, because --

5   Q.     I'm sorry, you trailed off there.

6   A.     The corporate entity, One World

7   Technologies, Inc., technically does not

8   manufacture anything.

9   Q.     So is it Techtronic that manufactures

10  them?

11  A.     It may be, or they may source it from a

12  third party.

13  Q.     A third party not related to Techtronic,

14  or another subsidiary?

15  A.     It could be either.

16  Q.     So your main role with regard to these

17  Ridgid tools that are manufactured by the parent

18  company or another subsidiary, is placing the

19  product in the stream of commerce over here in

20  America?

21  A.     Well I don't want to mislead you.  Our

22  corporate entity, One World Technologies, Inc.,

23  plays a major role in the development of the

24  product and decisions in regards to what that

Blue Rock Reporting, Inc.   610-761-5150

ROBERT BUGOS                    20

```
 1    product will be like.

 2                    We may have engineering input into

 3    the design of the product, in some cases we may

 4    not.

 5    Q.    Sir, could I ask you when you first

 6    became aware of this claim by Mr. Markhorst?

 7    A.    I have no recollection regarding this

 8    claim prior to this week; however, I have become

 9    aware of many claims and I may have at some time

10    known it prior to.

11    Q.    I'm sorry, prior to today?

12    A.    Prior to this week.

13    Q.    Sir, do you know if One World

14    Technologies has ever been involved in any type

15    of lawsuit in Pennsylvania?

16    A.    Yes, I do.

17    Q.    And when that occurred, who would

18    represent One World Technologies in

19    Pennsylvania?

20    A.    It varies.  We've had probably a dozen

21    firms over the course of the years that have

22    represented One World Technologies, Inc.

23    Q.    I have to ask the question.  Has

24    Ms. Wenke's firm ever represented your company?
```

Blue Rock Reporting, Inc.  610-761-5150

ROBERT BUGOS                    21

1   A.     I believe she has.

2   Q.     Pardon me?

3   A.     I believe she has, yes.

4              MS. WENKE:  I don't believe I've

5   ever represented One World Technologies, per se.

6              THE WITNESS:  That's possible.

7   BY MR. MacKNIGHT:

8   Q.     You thought you did, but Ms. Wenke

9   doesn't believe that's true.

10  A.     We're talking about One World

11  Technologies?

12  Q.     Yes.

13  A.     I don't know.  I don't know specifically.

14  Q.     Okay.  Let me ask you this, do the

15  interests of One World Technologies, are they

16  the same as the interests of Ridgid, with regard

17  to sales of the tools and manufacture of the

18  tools?

19  A.     You're asking me to draw a legal

20  conclusion in connection with something that I'm

21  not quite sure the scope of that and I don't

22  think that it's appropriate for me to answer

23  that question.

24              MS. WENKE:  I would object to

Blue Rock Reporting, Inc.  610-761-5150

ROBERT BUGOS                          22

1    that.

2                    MR. MacKNIGHT:  Okay.

3    BY MR. MacKNIGHT:

4    Q.      Who sourced the tool, the Markhorst tool

5    that's involved in this case?

6    A.      To the best of my knowledge, the tool

7    that you've described to me as being a Ridgid

8    brand miter saw with an exact line feature,

9    would have been a product that would be sourced

10   by One World Technologies, Inc.

11   Q.      And what does that mean when you say

12   sourced?

13   A.      They sold it to Home Depot.

14   Q.      They sold it to Home Depot.  And do you

15   have any knowledge who manufactured it?

16   A.      I do not know specifically; however, as I

17   mentioned before, the Ridgid brand power tools

18   that are marketed by One World Technologies,

19   Inc. to Home Depot, are sourced by -- from One

20   World Technology, Inc.'s ultimate parent in Hong

21   Kong, which is Techtronic Industries Company

22   Limited.

23   Q.      Okay.  I think that's all I have for you,

24   sir.  Thank you for participating today.


        Blue Rock Reporting, Inc.  610-761-5150

ROBERT BUGOS                          23

1              MS. WENKE:  Thank you.

2              THE WITNESS:  Do you have any

3    questions?

4              MS. WENKE:  No, I have none.

5                    - - -

6              (Deposition concluded at

7    3:30 p.m.)

8                    - - -

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

          Blue Rock Reporting, Inc.  610-761-5150

ROBERT BUGOS                                    24

1   STATE OF PENNSYLVANIA          )
                                   )   SS
2   COUNTY OF CHESTER              )

3           I, Margaret Robinson, Shorthand Reporter

4   and Notary Public duly and qualified in and for

5   the State of Pennsylvania, do hereby certify

6   there came before me the deponent herein, namely

7   ROBERT BUGOS, who was by me duly sworn to

8   testify to the truth and nothing but the truth

9   concerning the matters in this cause.

10          I further certify that the foregoing

11  transcript is a true and correct transcript of

12  my original stenographic notes.

13          I further certify that I am neither

14  attorney or counsel for, nor related to or

15  employed by any of the parties to the action in

16  which this deposition is taken; and furthermore,

17  that I am not a relative or employee of any

18  attorney or counsel employed by the parties

19  hereto or financially interested in the action.

20

21                        _Margaret Robinson_____
                           Margaret Robinson
22                         Notary Public

23

24


        Blue Rock Reporting, Inc.   610-761-5150